IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. DERRICK M. VERNON, ET AL.

**Direct Appeal from the Criminal Court for Shelby County**
**No. 94-01917-18    Arthur T. Bennett, Judge**

---

**No. W1998-00612-CCA-R3-CD - Decided April 25, 2000**

---

Defendants Derrick M. Vernon and Derrick Thompson were convicted of aggravated assault and especially aggravated kidnapping, and defendant Charles E. Thompson was convicted of these offenses as well as especially aggravated robbery, the victim of these offenses being the brother of Charles Thompson's girlfriend. All have appealed, alleging excessive courtroom security and questioning the sufficiency of the evidence. Additionally, Derrick M. Vernon and Derrick Thompson argue that their sentences were excessive. Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed**.

GLENN, J., delivered the opinion of the court, in which OGLE, J., joined. PEAY, J., not participating.

William L. Johnson, Memphis, Tennessee, for the appellant, Derrick M. Vernon.
Gerald Stanley Green, Memphis, Tennessee, for the appellant, Derrick Thompson.
Paula Skahan, Memphis, Tennessee, for the appellant, Charles E. Thompson.

Paul G. Summers, Attorney General and Reporter, J. Ross Dyer, Assistant Attorney General, William L. Gibbons, District Attorney General, and Thomas D. Henderson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendants, Derrick Vernon, Charles E. Thompson, and Derrick Thompson, were charged in Shelby County with especially aggravated robbery and especially aggravated kidnapping. The jury found Charles Thompson guilty of especially aggravated robbery and especially aggravated kidnapping, and Derrick Vernon and Derrick Thompson guilty of aggravated assault and especially aggravated kidnapping. The trial court sentenced Charles Thompson as a Range I, standard offender to twenty-five years for especially aggravated robbery and twenty-five years for especially aggravated kidnapping with the sentences to be served consecutively. The court sentenced Derrick Thompson as a Range I, standard offender to six years for aggravated assault and twenty years for

especially aggravated kidnapping with the sentences to be served consecutively. The court sentenced Derrick Vernon as a Range I, standard offender to six years for the aggravated assault and eighteen years for especially aggravated kidnapping with the sentences to be served consecutively. The defendants have timely appealed, listing three assignments of error:

I.      Whether the defendants were denied a fair trial due to an excessive display of security forces during jury selection and during the trial.

II.     Whether the evidence presented at trial was sufficient to support the jury's verdicts.

III.    Whether the sentences imposed upon Derrick Thompson and Derrick Vernon were excessive.

Based upon our review of the evidence presented, we affirm the decision of the trial court.

**FACTS**

On June 15, 1993, at approximately 8:00 p.m., the victim, Paloy Bernard Finnie, was at work at Gannes Beauty Shop in Memphis when defendant Charles Thompson approached him about the whereabouts of his sister, Torshia Burks. Charles Thompson was the "chief" of the Traveling Vice Lords gang, and Burks was his live-in girlfriend. Burks had left Thompson in Chicago and had returned to Memphis.

The victim told Thompson he did not know where his sister was, and Thompson left. Several minutes later, Thompson and his brother, defendant Derrick Thompson, returned to the victim's workplace, again asking the whereabouts of the victim's sister. At this point, the victim "willingly" left with these two defendants. The defendants took the victim to their brother's house where both struck the victim, still demanding that he tell them the whereabouts of Burks. The defendants beat the victim "for a little while," and then a man known to the victim only as "Sugar Man" came and held a gun to the victim while the defendants left to look for Burks.

Unable to find Burks, the defendants returned to the house and took the victim to defendant Charles Thompson's sister's house where the victim was forced to stay. The next morning, the victim was taken to an apartment in LeMoyne Gardens belonging to another sister of defendant Charles Thompson. A sheet was placed over the victim's head during the move. The victim testified he did not call out for help because there were "too many guns . . . on me." At the LeMoyne Gardens apartment, ten to twenty people severely beat the victim for two hours with a tire iron, knives, pipes, water hose, and their fists and feet. During the attack, a gold necklace and eight dollars were taken from the victim. Of his attackers, the victim knew defendant Charles Thompson,

"Kojack," "Pony," and "Red." The victim was later able to identify defendant Derrick Vernon as "Red" from a photo spread the police showed him.

Upon hearing sirens in the neighborhood, all of the victim's attackers except for four men left the apartment. The four men took the victim to a car and held him there. Defendant Charles Thompson had located Burks and had called her to inform her if she did not speak to him, he would kill her brother, the victim. The telephone was held to the victim's ear and he was able to mumble a few words to his sister to let her know he was alive. Defendant Charles Thompson told the victim if he ever told the police what had happened to him, he, his mother, and his sister would be killed. The victim was then released near the Boys Club in the LeMoyne Gardens area.

Severely injured, the victim collapsed on the side of a wall where he was released. Two men assisted him and called for help. The victim was taken to the Regional Medical Center where he was treated for a broken arm, burn marks on his legs, cracked ribs, swollen eyes and face, and cuts in his left arm which required stitches. Fearing for his and his family's safety, the victim told the police that he had been robbed by five black males and could not identify them.

Approximately two months after the attack, in August of 1993, the victim talked to authorities from the Federal Bureau of Investigation (FBI) and informed them of the truth surrounding his attack. The victim testified that he was not afraid to talk to the authorities at that time because he "took enough beating not to be afraid no more." The victim was placed in protective custody by the FBI for a period of time.

At the time of trial, the victim was again placed into protective custody and his sister, Burks, who was also to testify, could not be located.

Gwendolyn Terry-Cook, a patrol officer with the Memphis Police Department at the time of the incident, testified she responded to the call for assistance when the victim was found. The victim had been beaten "really bad." His face was swollen, and he had bruises, cuts, and knots on his arms and legs. The victim told her he had been beaten by five men who he could not identify.

Amy Griffith, registered records administrator at the Regional Medical Center, testified that the victim's treatment records reflected his injuries as: contusions to the face, arms, and legs, an ulnar styloid fracture, multiple small lacerations, lower extremity pain, forearm pain, right shoulder pain, face and jaw pain, blurred vision, and a swollen face, especially his eyelids.

Marcus Daniels, who was also charged and pled guilty in this case, testified he too was a member of the Traveling Vice Lords gang and that he participated in the assault on the victim on June 16, 1993. Daniels testified the victim was beaten because his sister, Burks, had reported some of the gang's criminal activities to the police. Daniels further stated that since defendant Charles Thompson could not locate Burks, he "took it out on her family."

All three defendants elected not to testify.

## DISCUSSION OF LAW

### I. Excessive Courtroom Security

The defendants contend the security measures and number of officers present in the courtroom and courthouse during the trial were excessive and prejudiced their right to a fair trial in violation of Holbrook v. Flynn, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986).

In Holbrook, the United States Supreme Court defined the standard by which security presence in the courtroom may be measured in relation to a defendant's constitutional right to a fair trial. In reviewing a habeas corpus petition from a defendant convicted in a Rhode Island state court, the Court determined "the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial" is not an inherently prejudicial practice and does not violate the fundamental principles of the criminal justice system. Holbrook, 475 U.S. at 568, 106 S.Ct. at 1345. When a courtroom security arrangement is challenged as inherently prejudicial, the question is whether there is "an unacceptable risk . . . of impermissible factors coming into play." Id. 475 U.S. at 570, 106 S.Ct. at 1346-47.

Holbrook involved a challenge to four uniformed officers seated behind six defendants. In finding the defendants were not entitled to relief, the court stated:

> We do not minimize the threat that a roomful of uniformed and armed policemen might pose to a defendant's chances of receiving a fair trial. But we simply cannot find an unacceptable risk of prejudice in the spectacle of four such officers quietly sitting in the first row of a courtroom's spectator section. Even had the jurors been aware that the deployment of troopers was not common practice in Rhode Island, we cannot believe that the use of the four troopers tended to brand respondent in their eyes with an unmistakable mark of guilt. Four troopers are unlikely to have been taken as a sign of anything other than a normal official concern for the safety and order of the proceedings.

Id. 475 U.S. at 571, 106 S.Ct. at 1347 (citations and internal punctuation omitted).

According to the record of the trial of these three defendants, yellow "police line" tape separated the potential jurors from other persons moving through the courthouse. Two uniformed TACT officers were outside the courtroom with the jury pool.[1] The defendants objected to this display of security and moved that the panel be stricken. The trial court denied the defense motion

---

[1]These officers may have been searching some individuals coming into the courthouse, including potential jurors, but the record is not clear on this point.

-4-

to strike the jury panel. The court explained the normal procedures for jury selection and stated the large jury pool necessitated some additional measures to keep the potential jurors in one place. Because no room large enough to hold the full jury pool was available, the trial court could not move the jury pool to a more secluded location.

As jury selection began, the defendants objected to the presence of three security officers seated behind them.[2] The defendants argued the officers seated behind the defendants would unduly prejudice the jury and prevent the defendants from receiving a fair trial. The trial court explained that the three officers seated behind the defendants and the other officers in the courtroom were necessary to move the jury and the defendants from the courtroom to other rooms in the courthouse and jail. The trial court instructed the officers to sit in a corner of the courtroom away from the defendants.[3]

On the whole, a review of the record reveals a security display that was unremarkable. Nothing exists in the record to indicate the security forces created an unacceptable risk of prejudice to the defendants. The defendants cite nothing in the record indicating prejudice caused by the security forces and, after our review, we find nothing to support such a claim.

This assignment is without merit.

## II. Sufficiency of the Evidence

When a challenge is made to the sufficiency of the evidence, the standard for appellate review is whether, after considering the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The defendant's burden of showing insufficiency is heavy, since all conflicts in testimony are resolved in favor of the State, and the State is entitled to the strongest legitimate view of the evidence as well as all reasonable or legitimate inferences that may be drawn therefrom. State v. Burns, 979 S.W.2d 276, 287 (Tenn. 1998).

### A. Especially Aggravated Kidnapping

To obtain a conviction for especially aggravated kidnapping, the State must prove: (1) the defendant knowingly removed or confined the victim unlawfully so as to interfere substantially with

---

[2]The defendants described the officers' uniforms as "full paramilitary regalia." The record indicates the officers were dressed in boots and slate grey uniforms.

[3]The trial court instructed officers to move to a new location, "once we get the space." The trial court was concerned about the large number of potential jurors taking up all the seating space in the courtroom. It is not clear from the record if the officers moved immediately to a new location or if they moved at all.

his liberty; and, (2) the defendant accomplished the false imprisonment with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or, the victim suffered serious bodily injury. Tenn. Code Ann. § 39-13-305(a) (1997) & § 39-13-302 (1997). Especially aggravated kidnapping is a Class A felony. Tenn. Code Ann. § 39-13-305(b)(1) (1997).

"Serious bodily injury" means bodily injury which involves:

      (A)   A substantial risk of death;
      (B)   Protracted unconsciousness;
      (C)   Extreme physical pain;
      (D)   Protracted or obvious disfigurement; or
      (E)   Protracted loss or substantial impairment of a function of a bodily member, organ or mental

Tenn. Code Ann. § 39-11-106(34) (1997).

A defendant may also be convicted of especially aggravated kidnapping under a criminal responsibility theory. A defendant is criminally responsible as a party to an offense if the offense is committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or by both. Tenn. Code Ann. § 39-11-401(a) (1997). A defendant is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense. Tenn. Code Ann. § 39-11-402(2) (1997).

The victim testified that Charles and Derrick Thompson came to his place of employment and asked him to leave with them. They then took the victim to their brother's house. When they arrived, they began beating the victim. When the beating stopped, another man, "Sugar Man," held a gun on the victim while Charles and Derrick Thompson went to look for Burks. When they returned, they took the victim to Charles Thompson's sister's house. The victim was not allowed to leave because Charles Thompson had not located Burks.

The next morning, gang members moved the victim to a third location where he was beaten again. At this third location, defendant Derrick Vernon joined the group involved in the beating. Gang members, including the three defendants, beat the victim for two hours, demanding that he reveal the location of his sister or he would not be released. The victim said he did not resist the beatings or cry out during the moves to the second and third locations because his attackers were larger than he and there were "too many guns" on him.

All three defendants participated in the beatings of the victim which resulted in serious bodily injury. At various times throughout the ordeal, each of the three defendants confined or aided another in the confinement of the victim. The victim testified that the injuries he sustained during his confinement included a broken right arm, which had not healed properly, and stitches in his left

arm. His leg was burned when those confining him set on fire and melted a plastic identification card onto his leg. He had "knots all around his head" and his eyes were swollen shut. Marcus Daniels's testimony supported the victim's description of the kidnapping and beatings.

Taken in the light most favorable to the State, this evidence was sufficient to establish the elements for especially aggravated kidnapping for each of the three defendants. See State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993), perm. app. denied (Tenn. 1994) (holding testimony of victim identifying perpetrator is sufficient in and of itself to support conviction).

## B. Aggravated Assault

To obtain a conviction for aggravated assault, the State must prove the defendant (1) intentionally or knowingly committed an assault as defined in Tenn. Code Ann. § 39-13-101 (1997) and, (2) caused serious bodily injury to the victim or used or displayed a deadly weapon. Tenn. Code Ann. § 39-13-102(a) (1997). Aggravated assault as defined above is a Class C felony. Tenn. Code Ann. § 39-13-102(d) (1997).

The victim testified that Derrick Thompson and Derrick Vernon participated in the beatings he received at the third location. The victim also testified Derrick Thompson beat him at the first location where he was held. As a result of these beatings, the victim suffered serious bodily injury. Taken in the light most favorable to the State, this evidence was sufficient to establish the elements of aggravated assault for these two defendants. See Strickland, 885 S.W.2d at 87-88.

## C. Especially Aggravated Robbery

To obtain a conviction for especially aggravated robbery, the State must prove (1) the defendant perpetrated an intentional or knowing theft of property from the person of another by violence or putting the person in fear; (2) the defendant accomplished the theft with a deadly weapon; and, (3) the victim suffered serious bodily injury. Tenn. Code Ann. § 39-13-403(a) (1997) & § 39-13-401 (1997).

A defendant may also be convicted of especially aggravated robbery under a criminal responsibility theory. A defendant is criminally responsible as a party to an offense if the offense is committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or by both. Tenn. Code Ann. § 39-11-401 (1997). A defendant is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense. Tenn. Code Ann. § 39-11-402 (1997). Especially aggravated robbery is a Class A felony. Tenn. Code Ann. § 39-13-403(b) (1997).

Defendant Charles Thompson cites the Tennessee Supreme Court's decision in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), in support of his argument that the robbery was incidental

to the kidnapping and was therefore not sufficient to support a separate conviction for robbery. In Anthony, the supreme court addressed the question of whether movement incidental to an underlying crime such as robbery would be sufficient to sustain a separate kidnapping conviction. 817 S.W.2d at 306. The court adopted a three-part test first promulgated by the Kansas Supreme Court in State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (Kan. 1976).

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>
>   (a) Must not be slight, inconsequential and merely incidental to the other crime;
>
>   (b) Must not be the kind inherent in the nature of the other crime; and,
>
>   (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

Anthony, 817 S.W.2d at 306 (citations omitted). Charles Thompson attempts to apply this test to the facts underlying his especially aggravated robbery conviction. This argument, however, misconstrues the holding in Anthony and does not support his contention that the evidence was insufficient to support an especially aggravated robbery conviction.

The test in Anthony was designed to address due process concerns which arise in prosecutions involving the commission of a felony such as robbery and some incidental movement or confinement of a victim. In the case *sub judice*, the robbery occurred as a distinct event *after* a separate kidnapping had taken place. For this reason, Anthony is inapplicable in this case.

The victim testified "Gwen's husband" took eight dollars and a gold necklace from him during the beating at the third location. This person, along with Charles Thompson and others, participated in the beating. The victim stated the men beat him with a tire iron, their feet and fists, pipes, a water hose, and knives. He also said some of the men had guns. Taken in the light most favorable to the State, this evidence is sufficient to support Charles Thompson's conviction for especially aggravated robbery.

### III. Sentencing

Derrick Thompson and Derrick Vernon contend that the trial court's sentences were excessive, and the court erred in not finding them to be especially mitigated offenders, in sentencing them to the maximum for aggravated assault, and in ordering their sentences to be served

consecutively.

When an accused challenges the length, range or manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with the presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, & -210 (1997). See State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

## A. Enhancement and Mitigating Factors

In sentencing Derrick Vernon and Derrick Thompson, the trial court stated:

> THE COURT: All right. The court, in regard to Mr. Derrick Vernon, who is also like the rest, a range one type offender at this point, the court has considered the nature of the offense. I've considered the evidence that I heard at trial, this particular sentencing report that I've had occasion to look at, his background to this point. He doesn't have any long criminal record of any kind. It seemed like he had one matter that – he had a couple of matters, a problem with the law. One of the matters may be a little more serious than the other. The evidence that I've heard and the statements you made here at the presentencing hearing, the defendants', apparently, I've seen no problems in the report concerning physical, mental problems, family history problems. And the court is, of course, there haven't been enhancement set out against Mr. Vernon. The court has to look at it in terms of the circumstances of this offense, and what occurred in regard to this defendant along with the other members of the gang of people who kidnapped and assaulted him. This defendant, of course, participated without hesitation in all of this. It was extremely cruel activity upon the victim in this matter. And this defendant, Derrick Vernon, was a part of that episode that rendered this man pulverized, as he indicated. He could hardly see. He didn't know where he was. They had beat him so much in the face and body and sometime he said a whole bunch of them are around taking turns at him. And as Mr. Henderson indicated, it was two days – it slipped my mind – that it was two days of sort of hell for this man who had done nothing to

these people. And the court takes in consideration it's gang activities. Gang activity. And no hesitation on Mr. Derrick Vernon's part to where this risk to human life was high, a risk of a person being killed, this man. In fact, he was threatened to be killed if he didn't reveal where his sister was.

So, all of this is part of Mr. Vernon's package that I have to look at because he was in on this situation. The court has to look at also that he was, apparently, obeying the dictates of the chief, is what I find. In fact, the victim indicated, he laid it all out for us as to what was going on here, that Mr. Thompson was the one that was directing the action. And these men were carrying it out. And they were telling him why they were beating him half to death. Because if you don't produce your sister, let us know, you won't leave here. So all of this the court has to take into consideration.

And in doing that, the court finds that – Of course, the jury found Mr. Derrick Vernon guilty of aggravated assault as included in that indictment. And the court is going to fix Mr. Derrick Vernon's sentence to that offense at six years. The court's taken into consideration the aggravated nature of this confrontation that was brought on by this defendant as well as the others and the deterrent [e]ffect that is obvious, of course, in a case like this, more so than most cases. And I fix his punishment at six years to aggravated assault, range one offender.

As to the especially aggravated kidnapping charge for the same reasons the court will fix his punishment at 18 years. The court's of the opinion that this was an especially frightening type of situation. This man, of course, didn't expect to live during that two-day period that they had him and kept him up and continued to beat and threaten him with guns and things. The court's of the opinion that 18 years for the especially aggravated kidnapping that the jury found him guilty of as a range one offender and the court will order, based on all the facts and circumstances of this case, the nature of this criminal episode, gang activity, that resulted in this particular innocent person being kidnapped and beaten terribly and the deterrent [e]ffect that I indicated, the aggravated nature of this situation, the court will run this 6 years consecutive with the 18 years.

As to Mr. Thompson, Derrick Thompson, aggravated assault, the court likewise for the same reasons, Mr. Thompson, of course, took part in this dastardly act, I guess you could call it, that resulted in this

-10-

man's death-like nightmares that he faced during the two days of this episode that he had to go through – ordeal, not an episode – ordeal that he had to go through.

The court has considered the presentence report, the evidence at trial that I heard, especially the victim who had to suffer all of that and the way he outlined what these persons were doing to him when he had no answer for them, because he knew not where she was. But they were determined to beat it out of him. And all of this the court takes into consideration, physical, mental history of the defendant Derrick Thompson indicates no such mental or physical condition that the court needs to consider concerning mitigation there, education [or] family history, there's no occupation or otherwise, does not indicate that this defendant was involved in anything but illegal activity. The same way Mr. Derrick Thompson was, being a member of that gang and reaping their benefits and profits from illegal activity. Drugs was the most prevalent, apparently.

The court is of the opinion that the criminal episodes rendered by Mr. Derrick Thompson and the deterrent [e]ffect of this activity, of this gang activity that was deadly, the court will set his aggravated assault at six years. All right. As a range one offender. The defendant does not have a long record of any kind, this defendant, Derrick Thompson. The court will set his especially aggravated kidnapping conviction at 20 years. The court feels that the deterrent [e]ffect is so important in a situation like this. This, of course, is the defendant's, Charles Thompson's brother, Mr. Derrick Thompson. And Mr. Charles Thompson should, if anything, be trying to keep his brother from doing so much of this. But he was his henchman, apparently, helping him out. And the court's of the opinion that based on all the facts and circumstances that it would set the especially aggravated kidnapping at 20 years as a range one offender, class-A.

. . . .

MR. HENDERSON: Excuse me, Your Honor, on Mr. Thompson, are those sentences to be concurrent or consecutive, on Derrick Thompson?

THE COURT: Oh, I forgot to mention it. The six years will be consecutive with the 20 years because of the aggravated nature of this situation. And to set anything different in these cases would depreciate the seriousness of these offenses as to Mr. Derrick as well

-11-

as Mr. – Mr. Derrick Vernon as well as Mr. Derrick Thompson. It would depreciate the seriousness of this offense and its [e]ffect on society today if the court sets anything other than what I'm setting. I think it would not be what is called for.

The defendants did not present any proof during the sentencing hearing, but counsel did refer to the sentencing report in contending that the court should consider mitigating factors.

The trial court stated specifically that, in sentencing, it was relying upon the evidence at trial and the sentencing report. Although the court did not specifically set out the numbers of the enhancement factors upon which it was relying, it is apparent, based upon the references to "extremely cruel activity" and that the "risk of human life was high" that the court was relying upon factors (5) and (10). Additionally, we note that the prosecutor argued that these factors should apply to Derrick Vernon and Derrick Thompson. Factors (5) and (10) provide as follows:

> (5)     The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense; and,

> (10)    The defendant had no hesitation about committing a crime when the risk to human life was high.

As to Derrick Thompson, it is apparent from the statements of the trial court that the comments regarding factors (5) and (10) during the sentencing of Derrick Vernon apply to Derrick Thompson as well. We will now consider the applicability of these factors.

As to factor (5), it is clear that Derrick Vernon and Derrick Thompson "treated or allowed [the] victim to be treated with exceptional cruelty during the commission of the offense." Tenn. Code Ann. § 40-35-114(5). The victim testified as to an ordeal during which he was held against his will and beaten with fists, weapons, and "everything they could find" to try and force him to reveal the whereabouts of his sister. During the beatings, his right arm was broken, his left arm was injured, requiring stitches, and a plastic identification card was set on fire and allowed to melt onto his leg. He had knots on his head and his eyes were swollen shut. During the beatings on the second day, he was told that he was going to die, and he believed that he would. He was told that his sister and mother would be killed if he told of the beating. When released by his captors, he was unable to walk. If this treatment does not amount to "exceptional cruelty," it is difficult to imagine what would. Since "exceptional cruelty" is not an element of aggravated assault or especially aggravated kidnapping, it can be applied to both of those charges. We agree with the trial court that "there was evidence of exceptional cruelty separate and apart from the actions which constituted the offense[s]." State v. Poole, 945 S.W.2d 93, 99 (Tenn. 1997). Accordingly, this factor was properly applied. Additionally, we find that these facts support the application of factor (10), because "the risk to human life was high." Tenn. Code Ann. § 40-35-114(10). This factor was properly applied to both

convictions of both defendants because the facts of the case make it clear that the defendants did not hesitate in "'committing a crime when the risk to human life was high.'" State v. Lavender, 967 S.W.2d 803, 808 (Tenn. 1998) (quoting State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994)).

Additionally, in our *de novo* review, we find that factor (16) applies to Derrick Vernon and Derrick Thompson. Factor (16) provides that "[t]he crime was committed under circumstances under which the potential for bodily injury to the victim was great." The victim additionally testified that, during the second day of the ordeal after he had still not revealed the location of his sister, one of his captors left and returned with a tire iron. The victim described was done to him next:

> Well, when they got me over there, Gwen's husband went out and got a tire iron, and they commenced to beating on me then with knives, they [sic] feet[], fists, pipes, water hose, everything they could find, they was hitting me with it.

Memphis police officer Gwendolyn Terry-Cook, who answered the call to where the victim was found and called for an ambulance, described his condition:

> Well, he – his face was bad. He had been beaten really bad. His face was swollen. He had bruises and cuts and knots on his arms and legs. He'd been beaten up pretty bad.

Thus, the facts of the crime also support application of enhancement factor (16). Lavender, 967 S.W.2d at 808.

Derrick Vernon argues the trial court should have found his age, family history, and lack of prior felony convictions to be strong mitigating factors under the provisions of Tenn. Code Ann. § 40-35-113 (1997). Although the trial court did not state which mitigating factor it found applicable to him, from the sentencing discussion in the record it is apparent that the trial court did consider the facts, his participation in the kidnapping, and his background as mitigating factors, presumably under Tenn. Code Ann. § 40-35-113(13) (1997) ("Any other factor consistent with the purposes of this chapter."). The trial court found no applicable mitigating factors for Derrick Thompson.

"The presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c) (1997). "Should there be enhancement but no mitigating factors for a Class B, C, D or E felony, then the court may set the sentence above the minimum in that range but still within the range." Tenn. Code Ann. § 40-35-210(d) (1997).

The sentencing range for aggravated assault, a Class C felony, is not less than three nor more than six years. Tenn. Code Ann. § 40-35-112(a)(3) (1997). Considering the applicable enhancement factors and the nature of the assault, the trial court sentenced Derrick Thompson and Derrick Vernon

to the maximum term of six years for the aggravated assault convictions.

"The presumptive sentence for a Class A felony shall be the midpoint of the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c) (1997). "Should there be enhancement but no mitigating factors for a Class A felony, then the court shall set the sentence at or above the midpoint of the range." Tenn. Code Ann. § 40-35-210(d) (1997). "Should there be enhancement and mitigating factors for a Class A felony, the court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e) (1997). The sentencing range for especially aggravated kidnapping, a Class A felony, is "not less than fifteen (15) nor more than twenty-five (25) years." Tenn. Code Ann. § 40-35-112(a)(1) (1997).

Considering the applicable enhancement and mitigating factors and the defendants' respective roles in the kidnapping, the trial court sentenced Derrick Thompson to twenty years and Derrick Vernon to eighteen years for the especially aggravated kidnapping convictions. Based upon our review with a presumption of correctness, we conclude these sentences are supported by the record.

### B. Especially Mitigated Offender Status

Both Derrick Thompson and Derrick Vernon argue the trial court should have found them to be especially mitigated offenders. Because the trial court found two applicable enhancement factors, and this court concluded that an additional enhancement factor should be applied, neither defendant is eligible for especially mitigated offender status. Tenn. Code Ann. § 40-35-109(a)(2) (1997).

### C. Consecutive Sentencing

Both Derrick Thompson and Derrick Vernon argue the trial court should not have ordered their sentences to be served consecutively. If a defendant is convicted of multiple offenses, the trial court may order the sentences to run consecutively if the court finds the existence of one of the factors listed in Tenn. Code Ann. § 40-35-115 (1997) by a preponderance of the evidence. Because the trial court did not discuss any particular criteria set out in Tenn. Code Ann. § 40-35-115 (1997), the presumption of correctness does not apply and we must review the record *de novo*.

Tennessee Code Annotated § 40-35-115(b)(4) (1997) allows for consecutive sentencing if "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." When this provision of Tenn. Code Ann. § 40-35-115 is used, the Tennessee Supreme Court's decision in State v. Lane, 3 S.W.3d 456 (Tenn. 1999), requires a showing of two additional elements. "[T]here must also exist 'particular facts' which show that consecutive sentencing is 'reasonably related to the severity of the offenses' and serves to protect society 'from further . . . aggravated criminal conduct.'" Lane, 3 S.W.3d at 461 (quoting State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995)).

Through their actions, both Derrick Thompson and Derrick Vernon showed no hesitation about committing a crime in which the risk to human life was high. The imposition of consecutive sentences in this case reasonably relates to the severity of the offenses committed and serves the need to protect the public from further criminal conduct by these two defendants. Both participated in the confinement of the victim at gunpoint over a two-day period. They also severely and cruelly beat him. Based upon a *de novo* review of the record, we affirm the decision to order consecutive sentences as to each.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

_____