## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

FOR PUBLICATION

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | **Filed:** April 27, 1998 |
| | ) | |
| Appellee, | ) | Hon. J. Randall Wyatt, Jr., |
| | ) | Judge |
| Vs. | ) | |
| | ) | DAVIDSON COUNTY |
| MARIO A. LAVENDER and, | ) | |
| ERIC L. HOBBS, | ) | |
| | ) | Supreme Court |
| Appellants. | ) | No. 01-S01-9704-CR-00088 |
| | ) | |

**FILED**

**April 27, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

FOR THE APPELLANTS
Attorney for Mario A. Lavender
Deanna Bell Johnson
Nashville, Tennessee

Attorneys for Eric L. Hobbs
Jeffrey A. DeVasher
Assistant Public Defender
Nashville, Tennessee
(Appeal Only)

Joan A. Lawson
Assistant Public Defender
Nashville, Tennessee
(Trial Only)

FOR APPELLEE:
John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Marvin E. Clements, Jr.
Assistant Attorney General
450 James Robertson Pkwy.
Nashville, Tennessee

Victor S. Johnson, III
District Attorney General

Nicholas D. Bailey
Charles Carpenter
Assistant District Attorneys General
Nashville, Tennessee

# O P I N I O N

COURT OF CRIMINAL APPEALS
AFFIRMED.                                                  DROWOTA, J.

   The defendants, Mario A. Lavender and Eric Hobbs, each were convicted

on two counts of robbery and one count of theft. With respect to Lavender, the trial judge imposed consecutive sentences of six years on each robbery conviction, and four years on the theft conviction, for an effective sentence of sixteen years. With respect to Hobbs, the trial judge imposed consecutive sentences of ten years on each robbery conviction, and four years on the theft conviction, for an effective sentence of twenty-four years. The Court of Criminal Appeals affirmed the trial court's judgment.

Thereafter, we granted the defendants permission to appeal primarily to consider whether certain enhancement factors, set forth in Tenn. Code Ann. § 40-35-114 (5), (10), and (16) (1997 Repl.),[1] should have been applied to enhance the sentences of each defendant in this case. After careful consideration, we hold that enhancement factors (10) and (16), are not, as a matter of law, essential elements of the offense of robbery, and may be properly utilized when imposing a sentence for robbery so long as the facts which establish the elements of the offense are not also relied upon to establish the enhancement factors. This is a determination which must be undertaken on a case-by-case basis. We also hold that enhancement factors (10) and (16) were properly applied in this case. Although, the proof does not support application of enhancement factor (5), we have determined that the sentences imposed are appropriate, and therefore, affirm the judgment of the Court of Criminal Appeals.

---

[1]These statutory provisions are as follows:
"(5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;"
"(10) The defendant had no hesitation about committing a crime when the risk to human life was high;" and
"(16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great."

## BACKGROUND

While sufficiency of the evidence is not an issue, the following brief statement of relevant facts is necessary to analyze the sentencing issue. The proof at trial showed that between 1:00 and 1:15 a.m. on January 3, 1994, the Wilson family was awakened by noises emanating from outside their residence. Looking out the window to investigate the source of the noise, Mr. Wilson observed two males standing on the patio outside his residence. When he turned on the exterior lights, the men fled across the street, and into a concrete drainage ditch which ran parallel to the home of William and Carolyn Newbill.

Mr. Wilson summoned the police, and two marked police cars arrived around 2:00 a.m., patrolled the area for approximately 20 to 30 minutes, and seeing nothing suspicious, left. During the time the police were in the neighborhood, the defendants, Lavender and Hobbs, were inside the Newbill home. They had used a tire iron to open sliding doors at the rear of the residence.

Mr. Newbill was awakened by one of the defendants who said, "Turn over and face the wall or I'll blow your brains out." As Mr. Newbill turned over, he noticed the clock beside his bed and recalled at trial that it had been 1:30 a.m. After he had turned over, Mr. Newbill said he felt something hard sticking him in the back. He "assumed it was a gun." The intruder told Mr. Newbill to cover his head with a pillow, and then asked if anyone else was in the house. Mr. Newbill put the pillow over his head, and told the intruder that his wife was asleep in the bedroom across the hall. One of the intruders awakened Mrs. Newbill and told her, "Don't look. Take this pillow and cover your head. We have a gun on your

husband and we'll shoot him if you don't [cooperate]."

The defendants remained inside the Newbill residence for over an hour, ransacking the house and forcing the Newbills to disclose the location of money, jewelry, and guns. During this time, Mr. Newbill, a heart patient, began having chest pains and shortness of breath. He asked the defendants if he could get up from the bed. When they refused, Mr. Newbill asked for and was given a glass of water. Eventually, the defendants allowed Mr. Newbill to get up from the bed and go to the bathroom. Mrs. Newbill was forced to remain on the bed, her head covered with a pillow, for the duration of the incident.

The defendants eventually left the residence taking with them cash and personal property in excess of $10,000. They drove away from the scene in Mr. Newbill's pickup truck which had a value of $9,600. Although she could provide no description of the men, Mrs. Newbill had looked out the window and seen the two men getting into the pickup truck to leave.

The Newbills notified the police, who located the pickup truck with the defendants inside at approximately 5:00 a.m. The defendants, with two patrol cars in pursuit, drove into a neighborhood, slowed the vehicle, leaped from it while it was still moving, and ran in opposite directions. The truck came to a stop when it collided with a utility pole. The police apprehended the defendants a short distance from the pickup truck. Both Lavender and Hobbs had dropped a pistol as they were attempting to evade the officers. Some of the property taken from the Newbills' home and large sums of cash were found on the defendants when they

were arrested.

Following a trial, the defendants were each convicted of two counts of robbery and one count of theft.[2] At the sentencing hearing, the trial judge found evidence of the following four enhancement factors: "(1) [t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;" "(5) [t]he defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;" "(10) [t]he defendants had no hesitation about committing a crime when the risk to human life was high;" "(16) [t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great." Tenn. Code Ann. § 40-35-114(1), (5), (10) & (16) (1997 Repl.). The trial court found no mitigating factors. Lavender was sentenced as a Range I, standard offender, to consecutive sentences of six years on each robbery conviction and four years on the theft conviction, for an effective sentence of sixteen years. Hobbs was sentenced as a Range II, multiple offender, to consecutive sentences of ten years on each robbery conviction and four years on the theft conviction, for an effective sentence of twenty-four years.

The Court of Criminal Appeals affirmed the trial court's judgment including application of the enhancement factors. With respect to Hobbs, the intermediate court noted that another enhancement factor should have been applied, "[t]he

---

[2]Each defendant had been charged with two counts of aggravated robbery, one count of aggravated burglary, and one count of theft. Prior to trial, Hobbs entered a plea of guilty to the theft charge. A jury trial was held on the other charges, at the end of which, the jury returned a verdict of guilty of robbery as to each defendant, a verdict of not guilty of aggravated burglary as to each defendant, and a verdict of guilty of theft as to Lavender.

defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Tenn. Code Ann. § 40-35-114(8) (1997 Repl.). Hobbs had been on probation at the time these offenses were committed. In a separate concurring opinion, one judge on the intermediate court, agreed that the sentences imposed were proper, but opined that factors (10) and (16) should not have been applied because the facts which supported the factors also supported the essential elements of the offense of robbery. Thereafter, we granted permission to appeal, and for the reasons that follow, now affirm the judgment of the Court of Criminal Appeals.

## STANDARD OF REVIEW

Imposition of a sentence pursuant to the Sentencing Reform Act of 1989 requires that the trial court first determine the applicable range of punishment based upon the severity of the offense and the defendant's prior criminal convictions. These statutory classifications, as well as the applicable ranges of punishment, are established by the General Assembly. See Tenn. Code Ann. §§ 40-35-106 to -109 (1997 Repl.). For most offenses, the presumptive sentence to be imposed under the Act is the minimum sentence in the appropriate range.[3] However, where there are enhancement factors, but no mitigating factors in the record, the trial court may set the sentence above the minimum in that range. If enhancement and mitigating factors are supported by the proof, the trial court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence

---

[3]The presumptive sentence for a Class A felony is the midpoint of the range if there are no enhancement or mitigating factors.

within the range as appropriate for the mitigating factors." <u>See</u> Tenn. Code Ann. § 40-35-210(c), (d), & (e) (1997 Repl.); <u>State v. Poole</u>, 945 S.W.2d 93, 95 (Tenn. 1997); <u>State v. Jones</u>, 883 S.W.2d 597, 601 (Tenn. 1994); <u>State v. Adams</u>, 864 S.W.2d 31, 33 (Tenn. 1993).

To facilitate appellate review, a trial court "must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence." <u>Jones</u>, 883 S.W.2d at 601; <u>see also</u> Tenn. Code Ann. § 40-35-210(f) (1997 Repl.). If the trial court complies with these requirements, an appellate court reviewing the length, range, or manner of service of the sentence conducts a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. If, however, the trial court fails to comply with these statutory requirements, an appellate court applies a *de novo* standard of review, without a presumption of correctness. <u>Poole</u>, 945 S.W.2d at 96; <u>Jones</u>, 883 S.W.2d at 600. In this case, the trial court complied with the statutory requirements; therefore, in considering whether or not the enhancement factors were appropriately applied, we review the trial court's findings with a presumption of correctness.

## ENHANCEMENT FACTORS

In this case, the defendants urge that the trial court erred in applying enhancement factors (10), high risk to human life, and (16) great potential for bodily injury, because they are essential elements of the offense of robbery in

every case. The State argues, on the other hand, that the determination of whether these two enhancement factors may be applied to enhance a sentence for robbery must be undertaken on a case-by-case basis, and in this case, the factors were appropriately applied.

Under the 1989 Act, only those enhancement factors enumerated in Tenn. Code Ann. § 40-35-114 (1997 Repl.) may be utilized to enhance a sentence. The factors must be "appropriate for the offense" and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-25-114 (1997 Repl.); Poole, 945 S.W.2d at 95. The rationale for these limitations is to

> exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense. Facts which establish the elements of the offense charged may not also be the basis of an enhancement factor increasing punishment. The legislature, in determining the range of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense.

Jones, 883 S.W.2d at 601. As we stated in Jones, and recently reaffirmed in Poole, the determination of whether or not a particular enhancement factor should be applied is a task which must be undertaken on a case-by-case basis. Poole, 945 S.W.2d at 96; Jones, 883 S.W.2d at 601. Therefore, we decline the defendants' invitation to adopt a rule which automatically would preclude application of enhancement factors (10) and (16) in every robbery case.[4]

---

[4]The defendants rely upon several unreported decisions of the Court of Criminal Appeals to support their argument that enhancement factors (10) and (16) are essential elements of the offense of robbery in every case. Some of the decisions relied upon support that proposition. Others refute the proposition and apply the enhancement factors as warranted by the particular facts and circumstances of each case. To the extent these unreported decisions conflict with our holding herein, they are overruled.

-8-

In determining whether a particular enhancement factor may be applied in a specific case, the trial court must consider the elements of the offense and the evidence adduced at the trial and sentencing hearing. If the facts which establish the elements of the offense charged also establish the enhancement factor, then the enhancement factor may not be used to increase punishment. Jones, 883 S.W.2d at 601.

Applying that test, we conclude that enhancement factors (10) and (16) were appropriately applied in this case. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401 (1997 Repl.). A person commits "theft of property" if, "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1997 Repl.).

In this case, the proof shows that Mr. Newbill was awakened and told if he did not cooperate, he would be killed. Mrs. Newbill was awakened and told if she did not cooperate, her husband would be killed. Having placed the victims in fear, the defendants demanded that the victims direct them to all their jewelry, money, and guns. The victims complied, and the defendants obtained control of the property, and left the premises with it, without the Newbills' effective consent. The foregoing facts support the elements of the offense of robbery.

However, in this particular case, the robbery was committed by the defendants inside the victims' home at approximately 1:30 a.m., a time when it is

likely that the residents of the home are present and sleeping. In fact, there were three cars parked in the driveway when the defendants gained entry to the Newbills' home. We agree with the trial judge that "someone could have easily been killed" when the defendants entered a home, in the middle of the night, under circumstances where the residents obviously were present. Therefore, the risk to human life was high, and the evidence does not preponderate against the trial court's application of enhancement factor (10), "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." Jones, 883 S.W.2d at 602.

The record also does not preponderate against the trial court's application of enhancement factor (16), "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great." The defendants remained inside the Newbills' home for over an hour, kept the victims separated for the entire time, and threatened to kill Mr. Newbill if either victim moved or refused to cooperate. Both Mr. and Mrs. Newbill testified that they feared for the safety of each other. Mrs. Newbill said she heard Mr. Newbill asking for permission to get up and complaining of chest pains. Fortunately for Mr. Newbill, she did not attempt to check on him, but these circumstances posed a great potential for bodily injury. Moreover, though the jury did not convict the defendants of aggravated robbery, the trial judge found that the defendants were armed. These facts illustrate circumstances under which the potential for bodily injury to either victim was great. In sum, the facts in this case support the trial court's application of enhancement factors (10) & (16).

However, we agree with the defendants that the record preponderates against the trial court's application of enhancement factor (5), that "[t]he defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense." In applying this factor, the trial court stated that the defendants had taken personal property and jewelry from the victims that "meant something to them, what is that, other than treating them with cruelty." Since the fact that the defendants had taken the property of the victims was utilized to establish an element of the offense of robbery it should not have also been relied upon to establish the enhancement factor. Moreover, there is no other evidence in the record to support application of the exceptional cruelty enhancement factor in this case. Though the defendants, by threat of violence, forced the victims to remain on their beds with their heads covered during the ordeal, the victims were not physically assaulted. Indeed, Mrs. Newbill testified that neither defendant touched her during the ordeal, and Mr. Newbill testified that the defendants touched him only once by sticking something hard in his back. Though the defendants initially would not allow Mr. Newbill to get up from the bed when he complained of chest pains, they honored his request for a glass of water immediately, and the defendants eventually allowed Mr. Newbill to go to the bathroom. There is no evidence in the record that Mr. Newbill requested his heart medication during the episode. Mr. Newbill testified that it was after the defendants had departed that he had taken his medication. While the Newbills certainly endured a harrowing ordeal, the evidence does not support a finding that they were treated with "exceptional cruelty" as that enhancement factor has been described in prior cases. State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995); State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991) (factor

-11-

normally applied in cases of physical abuse or torture).

However, elimination of this enhancement factor does not require a reduction of the sentences imposed in this case. With respect to Hobbs, four enhancement factors are supported by the proof. See Tenn. Code Ann. § 40-35-114 (1), (8), (10), and (16) (1997 Repl.). In this Court, Hobbs did not challenge application of enhancement factors (1) and (8),[5] and, as previously explained, the facts of this case support the trial court's application of enhancement factors (10) and (16). With respect to Lavender, three enhancement factors are supported by the proof. Tenn. Code Ann. § 40-35-114 (1), (10), and (16) (1997 Repl.). Again, Lavender did not challenge application of enhancement factor (1) in this Court, and we have previously found the facts of this case support the trial court's application of enhancement factors (10) and (16). The trial court also correctly held that there were no mitigating factors. Lavender was twenty-seven-years old at the time this offense was committed. There is no proof in the record to indicate that his age played any role in the commission of the offense. As the Court of Criminal Appeals noted, he previously had been convicted of two drug offenses before committing the crimes in question in this case. Considering the weight of the enhancement factors, the sentences imposed as to each defendant are appropriate.

As previously discussed, the facts and circumstances surrounding this

---

[5]Those statutory enhancement factors are as follows:"(1) [t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;" and "(8) [t]he defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community."

robbery also support the trial court's order of consecutive sentencing and finding that the defendants are dangerous offenders whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. Tenn. Code Ann. § 40-35-115 (b)(4) (1997 Repl.). This finding is further supported by the defendants' determination to commit this offense. Rather than abandoning their plan to invade a home when Mr. Wilson turned on his exterior lights and almost apprehended them, they persisted and immediately entered the Newbills' home across the street. This behavior certainly indicates an attitude of little or no regard for human life.

In addition, as the Court of Criminal Appeals held, the sentences imposed reasonably relate to the severity of the offense committed by the defendants, and are necessary to protect the public against further criminal conduct at the hands of these defendants. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). The trial court emphasized that the severity of this offense should not be depreciated. The trial court stated that the circumstances of this crime, involving personal confrontations inside the victims' own home, amounted to a nightmare. As the Court of Criminal Appeals pointed out, both defendants have prior criminal records and have served jail or prison sentences for past offenses which obviously have not deterred them from continuing to commit crimes. The record supports imposition of consecutive sentencing.

## CONCLUSION

For the reasons herein stated, we conclude that enhancement factors (10) and (16), are not, as a matter of law, essential elements of the offense of robbery,

-13-

and may be properly utilized when imposing a sentence for robbery so long as the facts which establish the elements of the offense are not also relied upon to establish the enhancement factors. This determination is dependent upon the particular facts of each case. Considering the circumstances of this case, we conclude that the enhancement factors were properly applied. Even though the proof does not support application of enhancement factor (5), we have determined that the length of the sentences and imposition of consecutive sentencing are appropriate in this case. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**

Anderson, C.J.
Birch, Holder, JJ.

Reid, J. - Not Participating.