IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 15, 2001 Session

## STATE OF TENNESSEE v. EDDIE McNABB

### Direct Appeal from the Circuit Court for Marion County
No. 4063     Thomas W. Graham, Judge

_____

### No. M2000-01490-CCA-R3-CD - August 28, 2001

_____

The defendant appeals from his maximum sentence of six (6) years for voluntary manslaughter and the trial court's imposition of consecutive sentences. After review, we hold that the trial court properly sentenced the defendant to six (6) years for the voluntary manslaughter conviction and correctly ordered the defendant's convictions for voluntary manslaughter and aggravated assault be served consecutive to one another. Therefore, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Philip A. Condra, District Public Defender, and Francis W. Pryor, Assistant Public Defender, for the appellant, Eddie McNabb.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General, and James Michael Taylor, District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Eddie McNabb, was indicted by the Marion County Grand Jury for first degree murder and attempted first degree murder. After a jury trial in May of 1998, the defendant was convicted of the lesser-included offenses of voluntary manslaughter and aggravated assault. A sentencing hearing was held on June 10, 1998, and the trial court sentenced the defendant as a Range I standard offender to six (6) years for the voluntary manslaughter and to four (4) years for the aggravated assault. The court denied the defendant any alternative sentence and ordered the two sentences to be served consecutively, for an effective sentence of twelve years. The defendant now appeals and asserts that the trial court incorrectly sentenced him to the maximum sentence within the range for the voluntary manslaughter and incorrectly ordered his sentences to be served consecutive to one another.

**Facts**

For background purposes, we will provide a summary of the underlying facts supporting the defendant's convictions as they were adduced at trial. The evidence showed that on April 5, 1998, the defendant had been drinking several alcoholic beverages. At some point in the late night or early morning hours of April 6, 1998, the defendant decided to go riding around in Whiteville, Tennessee. While riding around, the defendant pulled into a bank to turn around and two vehicles were blocking the exit. The defendant blinked his lights at the two vehicles and revved up his engine. When the vehicles did not move, the defendant squealed out and left through the entrance. He drove down to the Highway 28 Market and turned around. When he was coming back toward Whiteville, a car going the opposite direction blinked his lights at the defendant and when the car went by, they tapped their brakes. The defendant then pulled off in a parking lot and one of the victims, Billy Worley, pulled in and blocked the defendant's vehicle. The defendant exited his vehicle and approached victim Worley's passenger side window. The two men exchanged words.

The second victim, Bobby Caldwell, then arrived. Victim Worley then walked over to Caldwell's vehicle and began talking to Caldwell. At that moment, the defendant pushed his sister out of his way and an altercation ensued between the defendant and victim Worley. During this altercation, the defendant pulled out a knife and stabbed victim Worley seven times. When victim Caldwell saw his friend Worley fall to the ground, he exited his vehicle and approached the defendant. The defendant then stabbed victim Caldwell. After stabbing victim Caldwell, the defendant jumped on the hood of Caldwell's car and kicked the windshield several times. The defendant then left the scene of the crime.

According to the autopsy report, victim Worley sustained seven (7) stab wounds, including a stab wound to the chest, producing injury to the heart, bleeding and death. At the conclusion of the trial, the jury convicted the defendant of the lesser-included offenses of voluntary manslaughter for the killing of victim Worley and aggravated assault for the stabbing of victim Caldwell.

At the June 10, 1998 sentencing hearing, the State introduced the presentence report that contained an order from the Hamilton County Criminal Court dated November 20, 1995, placing the defendant on probation for two (2) years for a conviction of accessory after the fact of aggravated robbery.

The defendant presented several witnesses on his behalf. Daniel Campbell testified that he has known the defendant for seven to eight years and considered him a friend. He also testified that if the defendant received a sentence other than incarceration, he could provide him with a job and a place to live.

The defendant testified that at the time of the sentencing hearing he had been in jail for fourteen months. He stated that if he was sentenced to probation, he believed he could conduct himself appropriately. The defendant testified that if alcohol had not been involved in the present altercation, he would not be in this situation. He was also willing to comply with a condition of

probation that he abstain from alcoholic beverages. Also, he would have employment available to him.

On cross-examination, the defendant admitted that he failed to comply with the terms of probation previously imposed. He had violated the condition against consuming alcoholic beverages on a number of occasions, one of which resulted in a conviction for public intoxication. In addition, he admitted that he had a history of violence when he was drunk, including physically abusive behavior toward a former girlfriend. When asked about his former criminal history, he admitted that he entered a no contest plea to accessory after the fact of aggravated robbery. He also was discharged from the United States Marine Corps, after serving time in the brig for being absent without leave.

At the conclusion of the sentencing hearing, the trial court sentenced the defendant to six years on the voluntary manslaughter and to four years on the aggravated assault. The court denied any alternative sentence and ordered each sentence to be served consecutive to one another. The trial court found that the following enhancement factors apply to the voluntary manslaughter conviction: (1) that the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (6) that the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great; (9) that the defendant possessed or employed a deadly weapon during the commission of the offense; (10) that the defendant had no hesitation about committing a crime when the risk to human life was high; and (13) that the defendant committed the felony while on release status from a prior felony conviction. The trial court found one mitigating factor present: that the defendant lacked substantial judgment in committing the offense because of his youthful age of twenty-one years. However, the court stated, "I think that mitigating factor does apply, but I don't apply it very strongly." The trial court concluded that "[t]he enhancement factors far outweigh the mitigating factors in this case," and sentenced the defendant to six years, the maximum in the appropriate range for the voluntary manslaughter.

Next, the court ordered the defendant's sentences to run consecutive to one another. The court found that given the defendant's prior criminal record and prior criminal behavior, the aggressiveness of the defendant's actions, the overall damage to society, his previous inability to comply with less restrictive punishment, and his tendency to abuse alcohol and to act violently, the defendant presents a danger to society such that his sentences should be served consecutively. Finally, the trial court found that given the weight of all the evidence against an alternative sentence and to avoid depreciating the seriousness of the instant offense, the defendant should be required to serve his sentence in confinement.

## Analysis

This court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all

relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, if the trial court fails to comply with the statutory directives, there is no presumption of correctness. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

The defendant first challenges the trial court's determination that he should be sentenced to six (6) years for the voluntary manslaughter conviction, the maximum within the applicable range. In determining the appropriate length of a defendant's sentence, if no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors are present, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for the enhancement factors, and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); see Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments.

In sentencing the defendant on the voluntary manslaughter conviction, the trial court found that at least five (5) enhancement factors applied: (1) that the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (6) that the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great; (9) that the defendant possessed or employed a deadly weapon during the commission of the offense; (10) that the defendant had no hesitation about committing a crime when the risk to human life was high; and (13) that the defendant committed the felony while on release status from a prior felony conviction. The only mitigating factor that the trial court applied was the defendant's age of twenty-one years, which the trial court gave only a small amount of consideration. Ultimately, the trial court found that the enhancement factors far outweighed the one mitigating factor. Upon our review of the entire record, we disagree with the trial court's conclusion that factors (6) and (10) apply. Because this was a homicide, and death was an essential element of the offense, a trial court may not use particularly great personal injuries and

no hesitation about committing a crime when the risk to human life was high as enhancement factors. See, e.g., State v. Williamson, 919 S.W.2d 69 (Tenn. Crim. App. 1995); see also, State v. Kelley, 34 S.W.3d 471 (Tenn. Crim. App. 2000). Nevertheless, given the enormous weight of the remaining enhancement factors, we agree that the defendant should be sentenced to the maximum of six (6) years within the range for voluntary manslaughter.

Next, the defendant contends that the trial court incorrectly ordered his sentences for voluntary manslaughter and aggravated assault to be served consecutively. Tennessee Code Annotated section 40-35-115(b) provides that a court may order sentences to run consecutively if the court finds by a preponderance of the evidence that

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
(2) [t]he defendant is an offender whose record of criminal activity is extensive;
(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6) [t]he defendant is sentenced for an offense committed while on probation; or
(7) [t]he defendant is sentenced for criminal contempt.

See also State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Furthermore, in the event the trial court finds that the defendant is a "dangerous offender," it must also determine whether the consecutive sentences: (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

The defendant merely alleges that the trial court "did not make a finding that the extended service was necessary to protect the public against further criminal conduct." However, in determining whether the defendant's sentences should be served concurrently or consecutively, the court found that the defendant had a significant record of prior criminal behavior and criminal convictions, the defendant's actions in the instant offense were extremely aggressive, the defendant employed a dangerous weapon in the commission of these offenses, the instant offense was damaging to society, the defendant had an inability to comply with less restrictive punishment in the past, the defendant had a tendency to abuse alcohol and to act violent, and that prior attempts at

controlling his alcohol abuse had failed. Given these findings, the trial court found that the defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. Furthermore, the trial court found that the defendant presented a danger to society. Therefore, the trial court ordered that his sentences should be served consecutively. We disagree with the defendant's conclusory assertion that the trial court failed to make appropriate findings. Thus, the defendant failed to show how the record preponderates against the trial court's findings.

### Conclusion

After reviewing the record before us, we hold that the trial court properly sentenced the defendant to six (6) years for the voluntary manslaughter conviction. We also hold that the trial court correctly ordered the defendant's convictions for voluntary manslaughter and aggravated assault be served consecutively, for an effective twelve year sentence. Accordingly, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE