IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2001

**STATE OF TENNESSEE v. TIMOTHY D. GROVE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-C-1945     Steve R. Dozier, Judge**

_____

**No. M2000-02288-CCA-R3-CD - Filed October 3, 2001**

_____

The defendant, Timothy D. Grove, appeals his conviction for aggravated assault and ten-year Range II sentence in the Department of Correction. Specifically, the defendant contends evidence presented against him at trial was insufficient to support his conviction, and his sentence was excessive. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Timothy D. Grove.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Derrick L. Scretchen and Michelle H. Thompson, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On May 16, 1999, the defendant's mother and stepfather, Susan and Michael Naegley, and their friend, Crystal Roache, were "having a little party" with, and at the residence of, the 65-year-old victim, Teddy Farrell Layne. Michael Naegley left and later the 20-year-old defendant went to Layne's house to retrieve his mother, who was nude and intoxicated. The defendant assaulted Layne, who was seriously injured. The defendant was indicted and tried for aggravated assault causing serious bodily injury.

At trial, Layne testified that after Michael Naegley left the party, Naegley made repeated phone calls to Susan Naegley, who had remained at Layne's house. Susan Naegley, who had been drinking, began to dance and shed her clothes. Layne, who denied being naked and said he had on his "swim

shorts," was not surprised at Susan Naegley's actions because it was a "well-known fact that she gets naked every time she gets drunk. . . [and] always danced when she got naked." Layne was "as sure as [he] can be" that Crystal Roache was not naked but had on a "little bathing suit." Although Layne had a pool, there is no indication that any of the party participants actually went swimming.

According to Layne, the defendant came to his home along with a "fellow named Kevin" and another man whom Layne did not know. Layne testified the three men were on his porch when Kevin tore the screen on the door, opened it, and entered the house. Layne then went into a bedroom to get a gun.

Layne said that while he was trying to load his weapon, the defendant entered the bedroom. Layne tried to hit the defendant with the gun, although he was unsure as to whether he actually struck the defendant. Layne stated the defendant and his companions then beat him and, as a result, Layne lost consciousness. When Layne awoke in the hospital, he was in terrible pain. His injuries required two surgeries. Bones in his face were fractured during the assault, and he lost several teeth.

Elizabeth Scudder, Layne's daughter, testified she visited her father in intensive care after the assault. She described him as "a big bloody pulp from the neck up." After she left the hospital, she went to Layne's home to take photographs. She noticed a large hole in his screen door. As she entered the home, she found blood on the carpet, furniture, and walls. She noticed holes in a bedroom door, as if someone had tried to kick down the door. Blood was on the floor in the bedroom. No blood was on the porch. Scudder identified photographs showing blood on a chair, the floor, and the wall.

Dr. Jennifer Gordon-Maloney, an oral and maxillofacial surgery resident at Meharry Medical College, testified she treated Layne during his hospital stay. She stated his injuries included multiple facial lacerations, swollen and bruised eyes, and multiple facial fractures. She said the defendant had endured a severe trauma to his head and neck and opined that his injuries could have been life-threatening without medical treatment.

Amanda Kelton, the mother of the defendant's child, and her friend, Holly Spain, testified for the defense. Both of them stated that they went to Layne's home with the defendant and Will Harness. They denied that Kevin, an apparent friend of the defendant's, was with them. They testified the defendant knocked on the door, and his mother let him in the house while they remained on the porch with Harness.

According to Spain, the defendant was talking at the door with his mother when Layne, naked and highly intoxicated, cursed at the defendant and told him to leave. Spain testified the defendant replied that he would leave as soon as his mother left with him. Spain and Kelton both testified that Susan Naegley told her son she did not want to leave. Then, Layne brought out a gun. Spain said all of them ran back to the car, and Layne stood on the porch where he pointed a gun at them. She further testified that the defendant got out of the car and hit Layne, who fell down in the doorway. She also stated that other people were telling the defendant to get off of Layne.

Kelton testified that when Layne brought out the weapon, the defendant remained behind while the rest of them fled. Kelton said Susan Naegley told the defendant to leave. According to Kelton, the defendant pushed Layne, knocking the gun from his hands. Kelton stated the defendant would not let Layne get back up, but the fight lasted only two to three minutes.

Based on this evidence, the jury convicted the defendant of aggravated assault.

## SUFFICIENCY OF THE EVIDENCE

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

A person commits aggravated assault if he intentionally or knowingly commits an assault as defined in § 39-13-101 and causes serious bodily injury to another. Tenn. Code Ann. § 39-13-102(1)(A). Tenn. Code Ann. § 39-13-101(a)(1) defines assault, in part, as intentionally, knowingly or recklessly causing bodily injury.

The defendant contends the state's proof was insufficient to establish he acted intentionally or knowingly. He argues that, instead, the evidence established he acted as the result of impulse and sudden heat of passion produced by adequate provocation. He, therefore, contends he did not act intentionally or knowingly. We disagree. By analogy, voluntary manslaughter is the "intentional or knowing killing of another in a state of passion produced by adequate provocation." Tenn. Code Ann. § 39-13-211(a). Thus, our code contemplates that one can still act intentionally or knowingly even though provoked and in a state of passion.

The proof presented by the state established that the defendant forced his way into the victim's residence and severely beat the victim. Even the testimony of the defendant's witnesses indicated he intended to strike the victim, and people were trying to get defendant off of the victim. Further, the state's proof established that the victim suffered serious physical injuries which could have been life threatening absent medical intervention. We find that the proof was sufficient for a rational trier of fact to find beyond a reasonable doubt the defendant committed aggravated assault.

**SENTENCING**

The defendant next contends his 10-year sentence is excessive because the trial court improperly applied an enhancement factor and failed to apply mitigating factors. We respectfully disagree.

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence for a Class C felony shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

The defendant does not dispute that he was properly classified as a Range II multiple offender. *See* Tenn. Code Ann. § 40-35-106(a). Therefore, the range of punishment for the Class C felony of aggravated assault is not less than six years nor more than ten years. Tenn. Code Ann. § 40-35-112(b)(3). Defendant received the maximum sentence.

The trial court found four enhancement factors to apply; namely, factors (1) ( a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range); (6) (the personal injuries to the victim were particularly great); (8) (a previous history of unwillingness to comply with the conditions of a sentence involving release); and (13) (this felony was committed while defendant was on felony probation). Tenn. Code Ann. § 40-35-114(1), (6), (8), (13). The record reveals that defendant had six prior felony convictions and three prior misdemeanor convictions. He had previously committed criminal offenses while on probation and, at the time of the present offense, was on probation for prior felony offenses. The trial court found no mitigating factors were applicable. The trial court, giving great weight to the fact that the defendant was on

-4-

separate probations at the time the offense was committed, sentenced the defendant to ten years in the Department of Correction.

The defendant contends, and the state concedes, that the trial court erred in applying enhancement factor (6) (the personal injuries inflicted upon the victim were particularly great) since the extent of the victim's personal injuries is an element of the offense of aggravated assault. Since factor (6) is an essential element of aggravated assault for which the defendant was convicted, it cannot be used to enhance the sentence. State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994). The defendant does not contest the application of the remaining enhancement factors applied by the trial court.

The defendant also argues the trial court should have applied mitigating factors (2) (the defendant acted under strong provocation); (3) (substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense); (6) (the defendant, because of his youth, lacked substantial judgment in committing the offense); and (11) (the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct). Tenn. Code Ann. § 40-35-113(2), (3), (6), (11).

Three of these proffered mitigating factors relate to the bizarre activities involving the defendant's mother on the evening of the offense. Defendant has convinced us that discovering one's mother nude, dancing, and in the presence of a 65-year-old man, not her husband, who was either nude or wearing only "swim shorts," was indeed an "unusual set of circumstances." However, we are reluctant to disturb the trial court's finding that the defendant was not provoked into assaulting the victim. We also concur that neither mitigating factor (3) nor factor (11) was applicable. We also conclude the trial court correctly refused to apply mitigating factor (6) relating to defendant's youth. At the time of this offense the defendant was 20 years old, but he had six prior felony convictions. *See* State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993) (noting this mitigating factor is not determined simply by chronological age); State v. Elder, 982 S.W.2d 871, 879 (Tenn. Crim. App. 1998).

While the trial court erred in applying enhancement factor (6), it is clear that it did not give great weight to that factor. Instead, it gave great weight to the three enhancement factors that are applicable. The sentence of ten years imposed upon the defendant is adequately supported by the record and in conformity with the purposes and principles of the sentencing act. Therefore, we decline to disturb the sentence imposed by the trial court.

## CONCLUSION

After a thorough examination of the record, we affirm the judgment of the trial court.

                                             _____

                                             JOE G. RILEY, JUDGE