IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 19, 2013

## STATE OF TENNESSEE v. ANTONIO BUTLER

**Appeal from the Circuit Court of Rutherford County**
**Nos. F-67668A, F-67668B     David M. Bragg, Judge**

**No. M2012-02127-CCA-R3-CD - Filed April 15, 2013**

Antonio Butler ("the Defendant") pleaded guilty to one count each of robbery and aggravated assault. In his plea agreement, he agreed to concurrent sentences of five years for each count, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court denied judicial diversion and ordered that the Defendant serve his sentence in confinement. On appeal, the Defendant argues that the manner of service of his sentence is improper. After a thorough review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Gerald L. Melton, Public Defender; and Russell N. (Rusty) Perkins, Assistant Public Defender, Murfreesboro, Tennessee, for the appellant, Antonio Butler.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel Harmon, Assistant Attorney General; William Whitesell, District Attorney General; and Shawn Puckett, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Defendant was indicted on March 7, 2012, on three counts of aggravated robbery and one count each of aggravated burglary, aggravated assault, possession of a weapon during the commission of a dangerous felony, and possession of a Schedule III drug. The

State provided the following factual basis for the Defendant and his co-defendant's pleas at the plea hearing:

> [H]ad the State gone to trial in this matter, it would present testimony of Officer Eric Staats with the Lavergne Police Department that on October 25th, 2011, he responded to a call on Humble Drive regarding a home invasion.
>
> It was determined that [the Defendant] and [the co-defendant] did go inside the residence and – to purchase some drugs. While making the purchase, [the Defendant] and [the co-defendant] displayed a handgun and robbed the victims inside the residence.

The Defendant pleaded guilty to one count of robbery and to one count of aggravated assault. With regard to sentencing, the Defendant agreed to a five-year sentence on each count, to be served concurrently. The Defendant left it to the trial court to determine the manner of service, including whether the Defendant would receive judicial diversion.

At the sentencing hearing, the State admitted the presentence report as an exhibit, and it is included in the record on appeal. The Defendant "reserve[d] the right to contest" the fact that "the State ha[d] set forth some enhancement factors" which the Defendant asserted were inapplicable. The Defendant and co-defendant stipulated to the fact that the officer's testimony would be consistent with the presentence report and that the officer opposed either individual receiving judicial diversion. The Defendant notified the court of another matter pending in Davidson County which could affect the possibility of the Defendant receiving diversion. The trial court decided to proceed with the proof at the sentencing hearing and, if it felt appropriate at the conclusion of the proof, wait to make a decision based on the outcome of the matter in Davidson County.

The Defendant testified at the sentencing hearing that his participation in the events leading to his convictions was that he "pulled the gun out." He understood that, if he were to receive probation in this case, he would be required to pay any necessary restitution to the victims in this case. The Defendant confirmed that he was seventeen years old at the time of the offense and that he had an extensive juvenile record. He also confirmed that, if the trial court were to grant probation, the Defendant could live with his grandmother. He stated that he helped his grandmother financially by paying "the light bill."

The Defendant testified that, earlier that week, he had begun a program through the Salvation Army that included training toward a G.E.D. and drug counseling. He stated that the program also assisted him with "life issues" and taught him how to live on his own. He also had participated in a different drug treatment program for approximately a month, but

he had to leave the program because the present charges arose. On cross-examination, however, he acknowledged that, at some point, "they wouldn't let [him] come back" because of failed drug tests.

The Defendant identified a letter indicating that he had worked for TLC Lawn and Home Care for approximately the past year. He believed that, should he receive probation, he would be able to continue working in this capacity.

On cross-examination, the Defendant acknowledged that, in the months following his release on bond for the present charges, he had been arrested for criminal trespass, assault, and twice for driving on a suspended license. However, he testified that the criminal trespass charge already had been dismissed. He stated that he was fifteen years old when he first faced charges in juvenile court. At one point, he participated in drug court, and yet he failed a couple drug tests and had a couple "clean" tests. After approximately three or four months, the Defendant was "unsuccessfully released" from the program. The Defendant acknowledged that he received probation for his juvenile charges but was not "successful" at probation because of his subsequent arrests.

At the conclusion of the proof at the sentencing hearing, the Defendant requested that the trial court apply the mitigating factor considering the Defendant's youth.

The trial court then issued its ruling and found that the following enhancement factors applied:

> First Number 3, the offense involved more than one victim. Number 8, the Defendant before sentencing has failed to comply with conditions of release into the community. Further, the Court finds that it is not an element of either of these crimes that the Defendant had participated in a crime that carried a risk to human life. And, so, the Court finds that based on his actions of entering a home or invading a home for the purpose of stealing drugs, money, or both, that the Defendant had no hesitation about committing a crime where the risk to human life was high.
>
> Further, at the time the felony was committed that he was released and on probation in the community when he committed this offense.

As a mitigating factor, the trial court considered the Defendant's youth but discounted this fact based on his extensive criminal record in juvenile court, as well as his arrests after release on bond.

The trial court noted that, in determining the manner of the Defendant's sentence, it also had considered "[t]he presentence report, Defendant's physical and mental condition, social history, facts and circumstances surrounding the events." The court found that it "was a home invasion, use of a firearm. People were held and in some instance required to disrobe. The house was searched. Certainly an egregious set of facts."

In considering the Defendant's potential for rehabilitation, the trial court found that the Defendant

already [had] committed other crimes after he entered pleas of guilty on these offenses and prior to the time that he's been sentenced.

Further, he's previously participated in programs which he was unsuccessful in completing. There's no reason to believe that if this Court committed him to some other program that he would successfully complete that.

The trial court further found that nothing in the record supported the Defendant's assertion that he could comply with the terms of probation. Looking to the interests of society, the trial court found that this factor weighed toward confinement in that he already had been arrested for criminal trespass and assault "since he's been out." The trial court also found that "measures less restrictive than confinement [had] previously, frequently, or recently been applied unsuccessfully to the Defendant." The trial court then noted that, as far as a deterrent, it "hope[d] that any sentence would be sufficient to provide a deterrent." The trial court did not find that the facts of this case were "particularly enormous, gross, or heinous."

Given all these findings, the trial court sentenced the Defendant as a Range I, standard offender to serve the entirety of his five-year sentence in confinement. The trial court stated the following to the Defendant:

[Y]ou have created a significant record. The society and this State has made significant efforts to try to help you progress and change your direction through this. I'm not sure why you haven't been able to do that. But, certainly, based on your record, the Court thinks it's in your best interest to go ahead and serve this sentence, get this out of the way. Rather than placing you on probation where for the next five years you would have about 36 rules that you would have to comply with, as opposed to the two that brought you here today.

The Defendant timely appealed.

## Analysis

The Defendant argues on appeal that the manner of service of his sentence is improper. He asserts that "the trial court erred in failing to consider alternatives to incarceration in this case, including split confinement or probation . . . and judicial diversion." Specifically, the Defendant avers that the trial court improperly considered certain enhancement factors in its decision to sentence the Defendant to confinement.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing decision." Id. at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.; see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Our supreme court has held that the Bise standard of review also is applicable to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012). Thus, in reviewing a trial court's denial of full probation, the applicable standard of review is abuse of discretion with a presumption of reasonableness so long as the sentence "reflect[s] a decision based upon the purposes and principles of sentencing." Id.

In making its sentencing determination, a trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [Tennessee Code Annotated sections] 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2006). The trial judge also should consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5) (2006).

When a court determines the manner of service of a sentence, a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann § 40-35-102(5)-(6)(A) (Supp. 2007). However, the trial court is "not bound" by this advisory sentencing guideline; rather, it "shall consider" it. Id. § 40-35-102(6)(D). The defendant bears the burden of establishing his or her suitability for full probation. See Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)); State v. Mounger, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" Carter, 254 S.W.3d at 347 (citations omitted).

As stated above, the Defendant challenges the trial court's imposition of a period of confinement. In determining whether to deny full probation and impose a sentence involving confinement, the trial court should consider the following:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2006); see also Carter, 254 S.W.3d at 347. The principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § -103(2), (4). A trial court also should consider a defendant's potential for rehabilitation or lack thereof when determining the manner or length of the sentence. Id. § -103(5). Additionally, a trial court may "apply the mitigating and enhancement factors set forth in [Tennessee Code Annotated sections 40-35-113 and -114], as they are relevant to the [section] 40-35-103 considerations." State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996) (citing Tenn. Code Ann. § 40-35-210(b)(5) (1990)).

We hold that the trial court did not abuse its discretion in sentencing the Defendant to confinement. At the conclusion of the sentencing hearing, the trial court noted that it had considered "[t]he presentence report, Defendant's physical and mental condition, social history, facts and circumstances surrounding the events." The court found that the case "was a home invasion, use of a firearm. People were held and in some instance required to disrobe. The house was searched. Certainly an egregious set of facts."

In considering the Defendant's potential for rehabilitation, the trial court found that the Defendant

already [had] committed other crimes after he entered pleas of guilty on these offenses and prior to the time that he's been sentenced.

Further, he's previously participated in programs which he was unsuccessful in completing. There's no reason to believe that if this Court committed him to some other program that he would successfully complete that.

The trial court further found that nothing in the record supported the Defendant's assertion that he could comply with the terms of probation. Looking to the interests of society, the trial court found that this factor weighed toward confinement in that he already had been arrested for criminal trespass and assault "since he's been out." The trial court also found that "measures less restrictive than confinement [had] previously, frequently, or recently been applied unsuccessfully to the Defendant." The trial court then noted that, as far as a deterrent, it "hope[d] that any sentence would be sufficient to provide a deterrent."

The trial court did not find that the facts of this case were "particularly enormous, gross, or heinous."

The Defendant contends that the trial court improperly applied enhancement factors in its sentencing of the Defendant. The trial court determined that the following enhancement factors were established by the proof submitted at the sentencing hearing: "[t]he offense involved more than one (1) victim"; the "[D]efendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community"; the "[D]efendant had no hesitation about committing a crime when the risk to human life was high"; and "at the time the felony was committed," the Defendant was "[r]eleased on probation." See Tenn. Code Ann. § 40-35-114(3), (8), (10), (13)(C) (2010).

The record supports the application of at least some of these factors. According to the presentence report, between the time of the commission of the present offense and the time that he pleaded guilty, the Defendant was arrested for criminal trespass and assault. The criminal trespass charge was dismissed but, at the time of sentencing, the assault charge was still pending. Between the time that the Defendant pleaded guilty and the sentencing hearing, the Defendant was arrested on two different occasions for driving on a suspended license, and both charges were still pending at the time of sentencing. At the sentencing hearing, the Defendant acknowledged that he received probation for his juvenile charges but was not "successful" at probation because of subsequent arrests. Additionally, the Defendant testified that, at the time that he committed this offense, he was on probation for his juvenile charges. Thus, the trial court correctly applied factors eight and thirteen. See id. § -114 (8), (13)(C).

However, we now turn to the factor that considers whether "[t]he offense[s] involved more than one (1) victim." Tenn. Code Ann. § 40-35-114(3). In State v. Imfeld, 70 S.W.3d 698, 706 (Tenn. 2002), our supreme court stated that "there cannot be multiple victims for any one offense of aggravated assault committed against a specific, named victim." The indictments for both the robbery and aggravated assault charges to which he pleaded guilty were against specific, named individuals. Thus, the trial court erred in applying this enhancement factor.

Lastly, we look at whether the "[D]efendant had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(10). This Court has stated that "[t]his factor is inherent in the offense of aggravated assault." State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994) (citation omitted). Thus, the trial court should not have considered this enhancement factor with regard to the aggravated assault offense.

Looking at the Defendant's robbery conviction, however, the trial court properly considered this factor. Although the Defendant was indicted on an aggravated robbery charge, the Defendant pleaded guilty to and was convicted of robbery. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2006). A person commits theft of property "if, with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103 (2006). The facts established at the plea submission hearing and the sentencing hearing were that the Defendant and co-defendant entered a residence and robbed several victims using a handgun. The Defendant testified at the sentencing hearing that he "pulled the gun out." Our supreme court has found previously that this factor applied in a robbery context. See State v. Lavender, 967 S.W.2d 803, 807 (Tenn. 1998). Thus, given the nature and facts of the present case, the trial court properly considered this factor as to the Defendant's robbery conviction.

The Defendant also avers that the trial court should have considered additional mitigating factors based on the evidence presented by the Defendant at the sentencing hearing. As a mitigating factor, the trial court did consider the Defendant's youth but discounted this fact based on his extensive criminal record in juvenile court as well as arrests after release on bond. The trial court found that no other mitigating factors applied. We discern no error in the trial court's determinations on mitigating factors advanced by the Defendant.

Likewise, we discern no error by the trial court in ordering the Defendant to serve the entirety of his sentence in confinement. The trial court took into account the appropriate sentencing considerations. The proof in the record before us clearly does not rebut the presumption of reasonableness afforded the trial court's decision. See Bise, 380 S.W.3d at 709.

The Defendant, in the final sentence of his appellate brief, mentions in passing that the trial court failed to consider, among other sentencing alternatives, judicial diversion. We first note that, at the time of the Defendant's sentencing, the Defendant's counsel announced to the trial court that the Defendant had an assault charge pending adjudication in Davidson County. The Defendant's counsel requested a delay of the sentencing hearing until resolution of that matter so that the Defendant could submit an application for diversion. The trial court decided to proceed with the proof at the sentencing hearing and, upon hearing such proof, would "make a determination as to whether or not it would be necessary" to wait for resolution of the pending charge. Given that the trial court sentenced the Defendant to full confinement, without even partial probation, the trial court implicitly did not find it necessary to wait for adjudication of the assault charge so that the Defendant properly could request

judicial diversion.  Moreover, this Court has stated that, given that "judicial diversion is a form of probation, see Tenn. Code Ann. § 40-35-313(a)(1)(A), . . . the trial court's findings regarding the defendant's suitability for full probation [may] apply equally to its decision regarding the defendant's suitability for judicial diversion."  State v. Neil Thompson, No. W2008-00311-CCA-R3-CD, 2009 WL 1034519, at *13 (Tenn. Crim. App. Apr. 17, 2009) (citing State v. Vivian Braxton, No. W2004-02506-CCA-R3-CD, 2005 WL 3059435, at *9 n. 4 (Tenn. Crim. App. Nov. 10, 2005), perm. app. denied (Tenn. Mar. 20, 2006)).  We already have held that the trial court did not abuse its discretion in sentencing the Defendant to confinement.  Accordingly, the Defendant is not entitled to relief on this issue.

## CONCLUSION

For the reasons set forth above, we affirm the judgments of the trial court.


_____
JEFFREY S. BIVINS, JUDGE