IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 9, 2002 Session

## STATE OF TENNESSEE v. NATHAN SCOTT RAMAGOS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-D-2084     Seth Norman, Judge**

**No. M2001-01873-CCA-R3-CD - Filed May 20, 2002**

The defendant pled guilty to one count of sexual battery, a Class E felony; one count of indecent exposure, a Class A misdemeanor; and one count of reckless aggravated assault, a Class D felony. Denying his request for probation, the trial court sentenced him as a Range I, standard offender to the maximum sentence for each offense, for an effective sentence of four years. In a timely appeal to this court, the defendant challenges his sentences, arguing that the trial court erred in its application of enhancement factors, and in failing to find any factors in mitigation. Based upon our review, we conclude that two of the three enhancement factors found applicable by the trial court are unsupported by the record, but that the remaining enhancement factor, the defendant's prior history of criminal conduct, is entitled to great weight. We further conclude that mitigating factor (1), the defendant's actions did not cause or threaten serious bodily injury, applies to the defendant's convictions for sexual battery and indecent exposure, but that it carries very little, if any, weight in mitigation. Accordingly, we affirm the trial court's denial of the defendant's request for probation, and the sentences imposed in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

J. Todd Faulkner, Nashville, Tennessee (on appeal); Ross E. Alderman, District Public Defender (at trial), and Ralph W. Newman, Assistant Public Defender (at trial), for the appellant, Nathan Scott Ramagos.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jason W. Lawless, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On December 1, 2000, the Davidson County Grand Jury indicted the defendant, Nathan Scott Ramagos, on one count of sexual battery, three counts of indecent exposure, and one count of aggravated assault. The details of these offenses were provided by the assistant district attorney general at the defendant's May 10, 2001, guilty plea hearing:

> Your Honor, the State's proof in this case would be as to Count One of the indictment, that on March 25th of 2000, the defendant was working at -- or was in a booth at the Tennessee State Fair grounds [sic] here in Nashville, Davidson County. The victim, a young girl, and one of her friends went into the booth. The defendant touched her on the breast and buttocks without her consent, and she was under the age of 18.
>
> As to Count Two through Five, Your Honor, the State's proof would be that on August the 30th of 2000, the defendant at one point exposed himself to a person under the age of 18 here in Nashville, Davidson County, and later exposed himself to an adult who told the security officer. When [the defendant] was trying to escape, he drove his van at the security officer who had to get out of the way.

Agreeing that these facts were "basically true and correct," the defendant pled guilty to one count of sexual battery, a Class E felony; one count of indecent exposure, a Class A misdemeanor; and one count of reckless aggravated assault, a Class D felony. In accordance with the terms of his plea agreement, the remaining counts of the indictment were dismissed. The defendant agreed to leave both the length and the manner of service of his sentences to the trial court's determination, but requested that he be given a sentencing hearing.

Two witnesses testified at the June 20, 2001, sentencing hearing. Tamela Trout, the mother of the sexual battery victim, testified that her daughter was only 13 years old at the time the battery occurred. Although her daughter had been receiving counseling from her pastor since the incident, she was not the "same little girl she was." She was no longer trusting and had lost her innocence. Ms. Trout explained that her daughter was not present at the sentencing hearing because the previous hearing she had attended had upset her so much that she had been unable to return to school for three weeks following the hearing. Expressing her belief that it was likely the defendant had committed the same crime in the past, and would again in the future, Ms. Trout asked that the court deny him probation and require that he serve his full sentence in confinement.

The defendant testified that he was 42 years old and resided in Mobile, Alabama. He had been "legally depressed" since 1993, and currently was taking the antidepressant Zoloft. After his August 31, 2000, arrest in the instant case, he had voluntarily sought help for his problem at Mobile Mental Health, where he had had "over twenty visits" with a therapist who specialized in sex offenders. He had also, at the recommendation of his therapist, admitted himself into an inpatient

drug and alcohol program, even though he had not felt that he needed it at the time.  The defendant testified that he had been in the sex offender program at Mobile Mental Health "since August . . . [a]ll the way through until now."  He explained that he had ended the program the preceding week because of having to attend his sentencing hearing, and because he had been accepted into a halfway house in Jackson, Mississippi, where his family lived.  He said that he had already begun treatment at the Jackson Mental Health Center, and that his next appointment was scheduled for June 28.

The defendant testified that the "intense treatment" he had undergone had caused him to understand his problems, and to realize and regret the damage he had done.  He asked that Ms. Trout "[p]lease forgive [him]," saying that he "deeply regret[ted] it."  He could now "see the light" and believed that he could overcome his problem.  Asserting that he had "transformed [his] life in order to get help" and that he was a productive member of society, he asked the trial court to grant him probation and allow him to serve his sentence in Jackson, Mississippi, where he could be with his family.  During his direct testimony, the defendant also volunteered that he had been placed on probation on January 5, 2001, for another indecent exposure offense committed in Key West, Florida, and that he had been making all of his scheduled probation payments in that case.

On cross-examination, the defendant testified that his Florida arrest had occurred on January 5 or 6, 2000, and that he had pled guilty and been sentenced to probation approximately a year later, on January 5, 2001.  He said that he had made "initial contacts" with his therapist at the Mobile Mental Health Center in April 2000, and that he had a letter from his therapist stating that he "was seeing [his therapist] regularly in December."[1]  When asked if the treatment was a condition of his Florida probation, the defendant asserted that he had already been in treatment "for months" before the June 6 or June 12 court date in his Florida case, and that he had gone to the Florida court with letters from his therapist and the inpatient treatment center to show that he was receiving treatment for his problem.  The defendant said that the Florida offense, in which the victim had been a sixteen- or seventeen-year-old girl, had occurred when he was in Key West for the 2000 Millennium.

The defendant denied that he had been operating a booth in Florida, or that the beaded necklaces he had sold in his booth at the fairgrounds in Nashville were designed to attract young girls.  He further denied that he had asked the thirteen-year-old victim in the instant case to go into a bathroom to have sexual intercourse with him, or that he had touched her inappropriately.  Just how far the defendant was from truly admitting his problem, or accepting responsibility for his actions, is revealed by his responses to questions about the offense:

> A.     They [the thirteen-year-old victim and her friend] were at the booth for -- for a participial [sic] boy.  There was a young boy that was there.  It was a dinner, and he -- his grandfather was purchasing

---

[1]The transcript of the sentencing hearing indicates that the defendant presented various documents, which he claimed proved his treatment history, for the trial court's perusal.  The record before this court, however, contains neither the defendant's presentence report, which was admitted into evidence at the sentencing hearing, nor any letters or treatment records that the defendant may have presented at the hearing.

$500 worth of the beads for his booth; and this grandson was there, and she was attracted to that young boy. She was there for three to four hours.

. . . .

Q. Well, you do understand that you asked a 13-year-old female to go in the bathroom and have sex with you; right? And she was looking at beads in your booth, maybe with a boy there, too.

A. The bathrooms are -- are -- there are long lines at the bathrooms, sir. All of the bathrooms are -- you can't even get into the bathrooms.

Q. So are you telling the judge that you did not ask a 13-year-old girl to have sex with you?

A. I pled guilty to the charge because of the fact that I had -- I want to go forward with treatment, because I do have a problem.

Q. So you [sic] telling the judge today that you did not do these things to these children?

Did you touch that little girl or not?

A. I did not act inappropriately with that young lady other than the fact –

THE COURT: That wasn't the question, sir. That was not the question.

BY GENERAL LAWLESS:

Q. Did you touch –

A. I – I – the young lady was leaning on me, and I did put my arm around her waist and was joking with her; and that's what upset the other young lady that was with her, because I did put my arm around her.

And she said, That's my sister.

Q. Did you expose yourself?

A.     And I said, I'm just putting my arm around her, and you're –
there's all these people here.  We're not doing anything.

That's exactly what I said to her.

And she stormed off and went to get the security.

The defendant testified that he realized that it had been wrong of him to put his arm around a thirteen-year-old girl that he did not know.  When asked whether he had exposed himself to juveniles, the defendant explained that he had been masturbating in his van, which had dark tinted windows, and that he had not realized he could be seen.  He had not been targeting the two young girls who viewed him; one of them had just happened to ride up beside his van on her bicycle and "peek in [his] window."  He also denied that he had attempted to run over the security officer who tried to prevent his escape, pointing out that the officer had indicated, in his statement, that the defendant's van had been moving five to fifteen miles per hour, and that he had been able to step out of the vehicle's path.

The defendant admitted that he had the following prior convictions in Nashville: a 1994 theft conviction, which he said was a shoplifting offense; a 1994 criminal impersonation conviction; a second shoplifting conviction in 1994; a conviction for "some sort . . . of DUI offense" in 1993; and a simple assault conviction  in 1992.[2]  He testified that he had been placed on probation for the shoplifting and simple assault convictions, and that he had successfully completed courses in anger management, shoplifting, and reckless driving, and paid all the fines associated with those cases. The defendant further admitted that he had been arrested in Harrison, Arkansas, for indecent exposure, and in Conway, Arkansas, for theft.

The defendant testified that he was still selling beaded necklaces, but that his business was now strictly wholesale.  He refused to acknowledge that it would not be a good idea for him to be left alone with a child, testifying that his five sisters all had young children and they had never had a problem with him.  He also refused to admit that he had experienced any "sexual thrill" out of exposing himself to the young girls on bicycles.  When pressed to answer whether he did or did not have a problem, the defendant continued his pattern of equivocation, replying, "I definitely have had problems; and I have definitely recognized my problems, and I have stopped this problem."

At the conclusion of the hearing, the trial court found the following three enhancement factors applicable:

---

[2] As stated previously, the defendant's presentence report, which apparently listed these Tennessee convictions, was admitted into evidence but is not included in the record before this court.

(1)  The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(7)  The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;

(13)  The felony was committed while on any of the following forms of release status if such release is from a prior felony conviction:

> (A) Bail, if the defendant is ultimately convicted of such prior felony;
> (B) Parole;
> (C) Probation;
> (D) Work release; or
> (E) Any other type of release into the community under the direct or indirect supervision of the department of correction or local governmental authority[.]

Tenn. Code Ann. § 40-35-114 (1), (7), (13) (1997 & Supp. 2001). The defendant did not suggest any specific factors in mitigation, and the trial court did not find any applicable to his case. Finding that the defendant had a pattern of similar offenses, the trial court denied his request for probation, sentencing him as a Range I, standard offender[3] to concurrent terms of two years at 30% for the sexual battery conviction; eleven months, twenty-nine days at 70% for the indecent exposure conviction; and four years at 30% for the reckless aggravated assault conviction.

## ANALYSIS

### Sentencing

The sole issue the defendant raises on appeal is whether the trial court erred in its sentencing determinations in this case. Specifically, he contends that the trial court failed to state the facts in support of the enhancement factors it found applicable and failed to consider or apply relevant factors in mitigation. The defendant argues that evidence that he suffers from a mental illness, that his conduct neither caused nor threatened serious bodily harm, and that he has admitted and sought treatment for his problems should have been applied as mitigating factors. See Tenn. Code Ann. 40-35-113(1), (8), (13) (1997 & Supp. 2001). He asserts that the record indicates his great potential for rehabilitation and treatment, and suggests that probation, which would enable him to continue his therapy, would be an appropriate sentence in this case.

---

[3] The terms of the defendant's plea agreement specified that he was to be sentenced as a Range I offender.

The State concedes that the record does not support the trial court's application of enhancement factors (7) and (13) and that mitigating factor (1), the defendant's conduct neither caused nor threatened serious bodily harm, is applicable in sexual battery and indecent exposure cases. Nonetheless, the State argues that the defendant's prior history of criminal convictions and behavior justifies the enhanced sentences imposed by the trial court. We agree with the State.

Tennessee Code Annotated section 40-35-401(d) provides that when an accused challenges the length, range, or manner of service of a sentence, this court is to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). This presumption, however, is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Because we agree with the defendant that the trial court failed to clearly articulate the facts upon which it relied to find the enhancement factors applicable or the weight to which it was assigning those factors, and failed to make any factual findings concerning the absence of any factors in mitigation, we review this issue *de novo*, with no presumption of correctness given to the trial court's sentencing determinations. See State v. Jones, 883 S.W.2d 597, 599-600 (Tenn. 1994).

The defendant, as the party challenging the sentences, has the burden of establishing that his sentences were erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The record on appeal does not include the presentence report, which, normally, would preclude our review of the sentencing determinations of the trial court. State v. Jeremy Amis, No. 01C01-9709-CC-00385, 1998 Tenn. Crim. App. LEXIS 1278, at *5 (Tenn. Crim. App. Dec. 10, 1998), perm. to appeal denied (Tenn. May 10, 1999). It is the responsibility of the appealing party to provide a sufficient record to provide a "fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). In the absence of such a record, we presume that the trial court's rulings are supported by the evidence. State v. Oody, 823 S.W.2d 554, 558 (Tenn. Crim. App. 1991). However, it appears that the record is sufficient to make this review and we elect to consider the sentencing issues.

The defendant's conviction for sexual battery, a Class E felony, made him subject to a sentence ranging from not less than one to not more than two years. See Tenn. Code Ann. § 40-35-112(a)(5) (1997). His conviction for reckless aggravated assault, as a Class D felony, made him subject to a sentence ranging from two to four years. See id. § 40-35-112(a)(4). The defendant's indecent exposure conviction, a Class A misdemeanor, carries a sentence of not greater than eleven

months, twenty-nine days. See id. § 40-35-111(e)(1). The sentence to be imposed for a Class B, C, D, or E felony is presumptively the minimum in the range unless there are enhancement factors present. Id. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based on the existence of enhancement factors, and then reduce the sentence as appropriate for any mitigating factors. Id. § 40-35-210(e). There is no presumptive minimum sentence for misdemeanors.

We conclude that the record fully supports the application of enhancement factor (1), the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range. See id. § 40-35-114(1). The defendant's own testimony indicates that he has a fairly substantial history of criminal behavior, including convictions for shoplifting, criminal impersonation, DUI, and assault in this state and a conviction for indecent exposure in Florida. Moreover, in light of his prior conviction for indecent exposure, which involved a juvenile victim, we conclude that this factor is entitled to great weight.

Enhancement factor (7), the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement, id. § 40-35-114(7), is not appropriate for these offenses. An enhancement factor may not be based on the same facts used to establish an element of the defendant's crimes. State v. Lavender, 967 S.W.2d 803, 807 (Tenn. 1998). As the State points out in its brief, our supreme court has previously ruled that enhancement factor (7) is an essential element of the offense of sexual battery. See State v. Kissinger, 922 S.W.2d 482, 489 (Tenn. 1996). We further agree with the State that, under the circumstances of this case, enhancement factor (7) also appears to be an essential element of the defendant's conviction for indecent exposure. See Tenn. Code Ann. § 39-13-511(b)(1)(A)(ii), (B)(ii) (1997).[4] The trial court, therefore, erred in applying this factor to enhance the defendant's sentence.

The trial court based its application of enhancement factor (13), the felony was committed while the defendant was on a form of release from a prior felony offense, see id. § 40-35-114(13), on the "obvious" fact that the offenses were committed while the defendant was on "some type of release" from his Florida conviction for indecent exposure. We agree with the State that there is insufficient evidence to support the application of this factor. A copy of Florida's statute on lewdness and indecent exposure, which the State provided as an appendix to its brief, indicates that

---

[4] Indecent exposure is committed when a person intentionally exposes his or her genitals or buttocks to another and:

      (B) Reasonably expects the acts will be viewed by another and such acts:
          (i) Will offend an ordinary viewing person; *or*
          *(ii) Are for the purpose of sexual arousal and gratification of the defendant.*

Tenn. Code Ann. § 39-13-511(b)(1) (1997) (emphasis added).

the defendant's Florida offense was a misdemeanor, rather than a felony.[5]  See Fla. Stat. Ann. § 800.03 (West 2002).  Therefore, enhancement factor (13) is not applicable to enhance the defendant's sentences.

Although the defendant did not propose any mitigating factors to the trial court, he now argues that he should be given credit in mitigation based on evidence that his conduct neither caused nor threatened any serious bodily harm, that he suffers from a mental illness, and that he voluntarily admitted and sought treatment for his problems.  See Tenn. Code Ann. § 40-35-113(1), (8), (13) (1997).  Although we agree that mitigating factor (1) applies to the defendant's convictions for sexual battery and indecent exposure, see State v. Hayes, 899 S.W.2d 175, 187 (Tenn. Crim. App. 1995) (concluding that mitigating factor (1) was applicable to defendant convicted of aggravated sexual battery), we disagree that this factor applies to his conviction for reckless aggravated assault.  As support for his contention that his conduct neither caused nor threatened serious bodily harm to the security officer, the defendant cites his own testimony that the officer was easily able to step out of the path of his vehicle, and that he had never intended to run the officer down.  We find such self-serving testimony unpersuasive.  Furthermore, although we agree that mitigating factor (1) applies to the sexual battery and indecent exposure convictions, we think it is entitled to very little, if any, weight.

The defendant argues that the combination of his depression and the "problems" for which he is seeking therapy qualifies as a mental condition that significantly reduced his culpability for the offenses.  We disagree.  The defendant presented no proof of how his mental problems reduced his culpability for the offenses.  See State v. Augusto Oviedo, No. W2000-01003-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 562, at *14 (Tenn. Crim. App. July 20, 2001) (concluding that mitigation factor (8) did not apply when defendant failed to offer proof of how his manic depression and epilepsy reduced his culpability for his crime).  We also disagree that the defendant is entitled to credit for having voluntarily admitted his problem and entered into treatment, as it is clear from his testimony that he sought treatment, presumably in the hope that it would result in a lighter sentence, only after his indecent exposure arrest in Florida.  It is also clear from the record that the defendant's alleged "intensive therapy" has not yet rendered him capable of accepting responsibility for his actions.

In sum, we conclude that enhancement factor (1), the defendant has a prior history of criminal convictions or criminal behavior in addition to those necessary to establish his range, is applicable to the defendant's offenses and carries great weight.  We further conclude that the sole mitigating factor applicable, that the defendant's conduct neither caused nor threatened serious bodily harm to the victims in his sexual battery and indecent exposure offenses, carries very little weight in mitigation.  In our view, the heavy weight of the defendant's prior history of criminal conduct, combined with the very slight weight given to the sole factor in mitigation, more than justifies the imposition of the maximum sentences.

---

[5]It is apparent from comments made by the trial court that the defendant's Florida offense was not listed on his presentence report.  Therefore, the defendant's testimony was the only source of information about this offense.

Although the defendant's sentences make him eligible for probation, see Tenn. Code Ann. § 40-35-303(a), we can find no error in the trial court's decision to deny probation under the facts and circumstances presented by this case. The burden is on a defendant to show that he is a suitable candidate for probation. See id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)). Among other factors to be considered are the circumstances surrounding the offense, the defendant's criminal record, the defendant's present condition, the defendant's credibility or lack thereof, and whether a sentence of full probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Goode, 956 S.W.2d at 527; Bingham, 910 S.W.2d at 456.

As support for his claim that he is a good candidate for probation, the defendant cites the following testimony he offered at sentencing:

> I was depressed, and I was – this behavior was wrong, and I realize now what I was doing and what got – what lead [sic] me to those feelings, and that I have changed my behavior and my patterns of life and my goals and plans for the future in order to not have any of these offenses again . . . .

The defendant asserts that this testimony was not contradicted and indicates his "great potential for treatment and rehabilitation[.]" The claims the defendant made in the above-quoted passage, however, were contradicted by his own testimony at other points during the hearing, in which he made it clear that he had not accepted responsibility for his actions, or even acknowledged that he had engaged in any wrongdoing. Almost immediately after asking Ms. Trout's forgiveness, saying that he "deeply regretted it," the defendant attempted on cross-examination to rationalize and excuse his behavior, testifying that he had done nothing more than put his arm around the thirteen-year-old victim, and that he had not realized he could be seen as he masturbated in his van. We find particularly disturbing his apparent attempts to insinuate that the young victim was somehow at fault for staying in his booth for three or four hours because of her attraction to a young boy. The defendant touts his voluntary admission into the sex offender program in Mobile as evidence of his recognition of his problems. However, as we have previously noted, he did not begin his sex offender treatment until after his indecent exposure arrest in Florida. That fact, combined with his attempts to rationalize his behavior in the instant matter, leads us to conclude that, rather than demonstrating a strong potential for treatment, the defendant has shown himself to be a poor candidate for rehabilitation. We, therefore, conclude that the trial court did not err in denying the defendant's request for probation.

**CONCLUSION**

-10-

Based on our review, we conclude that enhancement factor (1) is supported by the record and entitled to great weight. We further conclude that mitigating factor (1) applies to the defendant's sentences for sexual battery and indecent exposure, but it carries very little, if any, weight in mitigation. Accordingly, we affirm the sentences imposed by the trial court.

_____

ALAN E. GLENN, JUDGE