IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 2000 Session

## STATE OF TENNESSEE v. AMANDA LEE SUTTON

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 214146     Stephen M. Bevil, Judge**

---

**No. E1999-00920-CCA-R3-CD**
**October 2, 2000**

---

The defendant, a former day care worker, pled guilty to Class D felony child abuse for breaking the jaw of a two-year-old child in her care. She was given a three-year sentence, to be served in split confinement, with six months in the county workhouse and four years of supervised probation. On appeal, the defendant raises the issues of whether the trial court erred in considering the age, vulnerability, and risk to the victim's life as a sentencing enhancement factor when the offense was already classified according to the age of the victim, and whether the trial court erred in failing to utilize alternative sentencing. Based upon our review, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Jerry H. Summers and Jimmy F. Rodgers, Jr., Chattanooga, Tennessee, for the appellant, Amanda Lee Sutton.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William H. Cox, III, District Attorney General; Kelli Lavon Crandell Black, Assistant District Attorney General; and Claire Hayes Brant, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant is a former day care worker who broke the jaw of a two-year-old child in her care by using excessive force to get the child to lie down for a nap. Based upon her guilty plea, the defendant was convicted of one count of child abuse of a child aged six and under, a Class D felony. The trial court sentenced her to three years in the Department of Correction, to be served in split confinement, with six months in the county workhouse at 75 percent, followed by four years of supervised probation. The defendant was additionally ordered, as a condition of probation, to attend anger management classes. The trial court denied the defendant's request for alternative sentencing.

The defendant filed a timely appeal, presenting two issues for review, which she states in her brief as follows:

I.  Whether it is proper to consider the age, vulnerability, and risk to human life of the victim as enhancement factors against a defendant who pleads guilty to an offense for which the penalty is classified depending on the victim's age.

II.  Whether the trial court erred in refusing to place the defendant immediately on some form of alternative sentencing.

Based upon our review, we affirm the sentence imposed by the trial court.

## FACTS

In 1996, the defendant, Amanda Lee Sutton, was a twenty-one-year-old day care worker at the Care and Play Day Care Center in Hamilton County, Tennessee. On November 20, 1996, one of the defendant's charges, two-year-old Jasmine Copeland, bit another child. The defendant reacted by picking Jasmine up by the arms, placing her on the diaper changing table, and squirting liquid soap into her mouth. Six days later, on November 26, 1996, Jasmine refused to lie down for a nap. In response, the defendant physically forced the child onto a thin sleeping mat on the floor of the day care center, and held her down. In the process, Jasmine's jaw was fractured.

Two different versions were given of the November 26, 1996, incident. According to the defendant, she "firmly placed" the child on her side on the "sleeping mat," and completely covered her with a blanket. She said that she sat behind the child and rubbed the child's back, but did not hold her down. According to day care employees Lisa R. Walker and Patty Sue Hamby, however, the defendant "threw," rather than "placed," the child onto the mat. In an interview with Chattanooga Police Sergeant Francine Fleming, Hamby stated that the defendant "jerked" Jasmine up by the arms, "threw her on the mat" in a "body slam," and then lay partially on top of the child to keep her down. In a separate interview, Walker said that the defendant threw Jasmine "face first" on the mat and "then she covered her up with a blanket and laid [sic] half across the child until the child cried herself to sleep."

On January 29, 1997, the Hamilton County Grand Jury returned two indictments against the defendant. The defendant was charged with child abuse, in violation of Tennessee Code Annotated Section 39-15-401, for the soap incident. She was charged with aggravated child abuse, in violation of Tennessee Code Annotated Section 39-15-402, for the incident which resulted in the child's broken jaw. The State subsequently dismissed the charge based on the soap incident, and accepted a guilty plea to a reduced charge of child abuse of a child age six and under, in violation of Tennessee Code Annotated Section 39-15-401(a), a Class D felony, for the broken jaw incident. The parties agreed that the defendant, as a Range I, standard offender, would receive a sentence within the range of two to four years.

Over a dozen people, all prepared to vouch for the defendant's good character and reputation in the community for truth and veracity, appeared at her sentencing hearing, held February 1, 1999, and March 1, 1999. The defendant's minister, John Randall Bell, pastor of the Lupton Drive Baptist Church in Chattanooga, testified that he had known the defendant for three years, that she regularly attended church, and that she had a good reputation for truth and veracity in the community. He stated that he had never known the defendant to be a violent person, and that he would not hesitate to have her assist in the church nursery or day care. Bell further testified that the defendant had expressed remorse for the victim's injury. Bell also stated, however, that the defendant had been surprised that the victim was hurt, and indicated that she did not know how the injury had occurred.

Four other witnesses, friends and neighbors of the defendant, testified that they had known the defendant for a number of years, that her reputation in the community for truth and veracity was good, and that she was not a violent person. Two of these witnesses had children. They testified that the defendant had babysat their children in the past, that she was good with children, and that they would not hesitate to have her care for their children in the future.

The defendant testified that she was single, and lived at home with her mother. She was currently employed as a cashier at a grocery store, where she had worked for the past year and a half. The defendant stated that on November 26, 1996, one of her day care co-workers, Lisa Walker, asked her to help get the victim, who was fussing, settled for a nap. The defendant explained that she picked the victim up under her arms and "firmly" laid her down on the sleeping mat on the floor. The defendant maintained that she had not thrown the child. She described the incident for the court:

> Okay. I was over there on the preschool side and then Lisa called me
> over there to help her and she was fidgeting and then they–I asked–I
> picked her up to lay her down and I laid her down on her side and I
> covered her up and I was rubbing her back, telling her to go to sleep.

The defendant said that she had not intended to hurt the victim, and that she had been unaware, at the time of the incident, that the victim had been injured.

On cross-examination, the defendant admitted that she originally told Sergeant Fleming that she had used more force than she should have with the victim. She said, however, that she had not meant it the way it sounded, stating, "I told her at first that I used more force than maybe what I should have, but she was moving in the process and I didn't mean like force."

The victim's father testified that Jasmine's jaw was swollen and bruised when he picked her up from the day care on November 26, 1996. He said that his daughter was visibly upset, but unable to tell him what had happened or why she was crying. He and his wife took the child to the hospital, where X-rays revealed a broken jaw. On cross-examination, the father acknowledged that the break in his daughter's jaw was a hairline fracture, and that he and his wife had incurred $804 in medical bills for Jasmine's treatment.

The trial court found three enhancement factors under Tennessee Code Annotated Section 40-35-114 to be applicable in sentencing: (4), the victim was particularly vulnerable because of age or physical or mental disability; (10), the defendant had no hesitation about committing a crime when the risk to human life was high; and (15), the defendant abused a position of public or private trust. The court found factor (10) applicable in this case partly because of the extreme youth of the victim, stating:

> [A]nytime you're dealing with a child of tender years of two years old or younger and you treat that child in such a manner that that child could be subject to being injured, the risk to human life is high in that particular regard and I do find factor No. 10 applies.

The trial court gave "great weight" to factor (15), the defendant's abuse of her position of public trust as a day care worker in whose care parents had entrusted their young children.

The trial court found relevant mitigating factors to be the defendant's youth, her lack of judgment due to her youth, and her lack of a sustained intent to commit a crime. The trial court also found the defendant's lack of a prior record and the number of responsible citizens who appeared in court on the defendant's behalf to be mitigating factors. The trial court noted, however, that these latter two factors carried little weight.

The trial court found, on balance, that "the seriousness of the enhancement factors outweigh[ed]" the mitigating factors. Consequently, the trial court sentenced the defendant to a term of three years in the Department of Correction. Concluding that the seriousness of the crime would be depreciated if the defendant did not serve any jail time, the trial court ordered that the defendant's sentence be served in split confinement, with six months in the Hamilton County Workhouse at 75 percent, followed by four years of supervised probation. The trial court found the defendant to be unsuitable for placement in the Hamilton County Community Corrections Program because of the violent nature of her offense, because she had violated a position of public and private trust in perpetrating the crime, and because she had failed to show true remorse for her actions. The defendant filed a timely appeal to this court.

## ANALYSIS

### I. Applicability of Sentencing Enhancement Factors

The first issue the defendant raises is whether the trial court erred in applying enhancement factors (4) and (10) to enhance her sentence from the two-year minimum to three years. The defendant argues that the trial court erred in applying these enhancement factors because both factors were based on an essential element of her crime, namely, the age of the victim. The defendant asserts that the crime to which she pled guilty, Tennessee Code Annotated Section 39-15-401(a), child abuse of a child age six and under, "explicitly accounts for the victim's age, and implicitly accounts for the accompanying increased risk of injury to an abused child under the age of six, by

-4-

increasing the classification of the offense from a Class A misdemeanor to a Class D felony when, as here, the child abuse is inflicted upon a victim less than six years old."

The State argues that the trial court did not err in applying enhancement factors (4) and (10). The State asserts that factor (4) is applicable because the victim, a two-year-old child, was both completely powerless to resist the defendant's abuse at the time it occurred, and unable later to communicate what the defendant had done. The State asserts that factor (10) is applicable because the defendant's action, in throwing a two-year-old child onto the floor with enough force to fracture the child's jaw, was one which necessarily placed the child's life at great risk.

When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The weight to be afforded an enhancement or a mitigating factor is left to the trial court's discretion as long as the trial court complies with the purposes and principles of the 1989 Sentencing Act, and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210 (1997), Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986). In this case, the record reveals that the trial court followed the statutory sentencing guidelines, and that it properly considered all relevant facts and circumstances in the case. Accordingly, we review this issue *de novo,* giving the presumption of correctness to the trial court's findings.

The applicability of a particular enhancement factor must be determined on a case-by-case basis. State v. Lavender, 967 S.W.2d 803, 807 (Tenn. 1998). If the same facts which establish the element of the offense charged are also used to establish the enhancement factor, then the enhancement factor may not be used to increase punishment. Id. (citing State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994)).

The defendant pled guilty to a violation of Tennessee Code Annotated Section 39-15-401(a), which provides:

> Any person who knowingly, other than by accidental means, treats a
> child under eighteen (18) years of age in such a manner as to inflict
> injury or neglects such a child so as to adversely affect the child's
> health and welfare commits a Class A misdemeanor; provided, that
> if the abused or neglected child is six (6) years of age or less, the
> penalty is a Class D felony.

Tenn. Code Ann. § 39-15-401(a) (1997). Since the victim was six years of age or less, the defendant's crime was a Class D felony, rather than a Class A misdemeanor. The elements necessary to establish the defendant's crime, therefore, were that the child was six years of age or less, and that

the defendant treated the child knowingly, other than by accidental means, in such a manner as to inflict injury on the child. The defendant contends that the same fact necessary to establish an essential element of her crime, the victim's age, was used to establish the applicability of both enhancement factor (4) and enhancement factor (10). We disagree.

## A. Enhancement Factor (4)

Enhancement factor (4) may be applied when the facts show that the "victim of the offense was particularly vulnerable because of age or physical or mental disability, . . ." Tenn. Code Ann. § 40-35-114(4) (1997). Our supreme court, in State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993), concluded that enhancement factor (4) "relates more to the natural physical and mental limitations of the victim than merely to the victim's age." Id. Thus, the Adams court found that factor (4) could be used in an aggravated rape case of a child under the age of thirteen, even though the age of the child is an essential element of the crime, "if the circumstances show that the victim, because of his age or physical or mental condition, was in fact 'particularly vulnerable,' i.e., incapable of resisting, summoning help, or testifying against the perpetrator." Id. at 35.

The record in the case at bar clearly supports the trial court's application of enhancement factor (4), in that the victim "was particularly vulnerable because of age or physical or mental disability. . . ." Tenn. Code Ann. § 40-35-114(4) (1997). The victim in this case, a two-year-old child, was completely powerless to prevent the abuse inflicted on her by the adult defendant. Moreover, the record reflects that the child was incapable of communicating, even to her own father, what the defendant had done to her. Based upon these facts, we conclude that the trial court did not err in applying enhancement factor (4).

## B. Enhancement Factor (10)

Enhancement factor (10) may be applied when the facts show that "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(10) (1997). The key inquiry for a court in determining if factor (10) applies is whether, under the circumstances of the case, the defendant's actions caused a high risk to human life. State v. Jones, 883 S.W.2d 597, 602-03 (Tenn. 1994); State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995).

In this case, the defendant's co-workers, Hamby and Walker, both testified that the defendant violently threw the victim onto the one- to two-inch thick, narrow sleeping mat located on the floor of the day care center. The child's jaw was fractured as a result of the defendant's actions. The trial court found that, under these circumstances, the risk to the child's life was high. Although the trial court based its finding, in part, on the fact that the victim was only two years old, and therefore more susceptible than an older child to serious injury by the defendant's action, it is clear that factor (10) was shown to be applicable by evidence other than that which was required to establish the offense. We conclude, therefore, that the trial court did not err in applying enhancement factor (10).

## II.  Alternative Sentencing

The second issue the defendant raises is whether the trial court erred in ordering that she serve her sentence in split confinement, with six months in the county workhouse, followed by four years of supervised probation.  The defendant argues that the trial court erred in not placing her on probation for the full term of her sentence.  The defendant contends that the facts in her case support full probation, rather than imprisonment.   In support, the defendant cites her lack of a prior record, her lack of intent to harm the victim, her expressed remorse, the large number of character witnesses who appeared on her behalf, and the fact that the victim did not require hospitalization for her injury.

In the alternative, the defendant argues that she should have received judicial diversion, or been placed in the Hamilton County Community Corrections Program for the full term of her sentence.  The defendant contends that her crime was a nonviolent felony, and that, as such, she meets the statutory requirements for eligibility for admission to the community corrections program. The defendant argues that the trial court's denial of her request for community corrections was arbitrary and capricious.

The State argues that the trial court did not err in the form of sentence it imposed upon the defendant. The State points out that the trial court specifically found that the defendant should serve some jail time in order to avoid depreciating the seriousness of the offense.  The State asserts that the defendant, convicted of a violent felony, does not meet the eligibility requirements for the community corrections program.  The State notes, moreover,  that the community corrections staff found the defendant unsuitable for the program.

### A.  Probation

The defendant first argues that she should have been immediately placed on full probation. As a standard offender convicted of a Class D felony, the defendant is presumed to be a favorable candidate for alternative sentencing, absent evidence to the contrary.  See Tenn. Code Ann. § 40-35-102(6).   Tennessee Code Annotated Section 40-35-303(a) states that a defendant shall be *eligible* for probation, subject to certain exceptions that do not apply in this case, if the sentence imposed upon the defendant is eight years or less.  Tenn. Code Ann. § 40-35-303(a) (1997).  Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law.  See Tenn. Code Ann. § 40-35-303(b) (1997).   The burden is upon the defendant to show that she is a suitable candidate for total probation.  State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-303(b) (1997).  In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

In determining whether or not to grant probation, the trial court should consider, among other factors, the circumstances surrounding the offense, the defendant's criminal record, the defendant's

present condition, the defendant's credibility or lack thereof, and whether a sentence of full probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Goode, 956 S.W.2d at 527; Bingham; 910 S.W.2d at 456 .

The defendant, in arguing for full probation, points, *inter alia*, to her lack of a criminal record, the large number of character witnesses who appeared in her behalf, and the fact that the victim did not require hospitalization for her injury. The trial court considered all these factors, however, and found them to be outweighed by the circumstances surrounding the defendant's offense, and the need for some term of imprisonment to avoid depreciating the serious nature of the crime. The trial court also found that the defendant was not truly remorseful, and that, despite her guilty plea, she had not fully accepted responsibility for her role in causing the child's injury. Consequently, the trial court, in its discretion, denied the defendant full probation. The court explained its decision:

> In order to preserve the sanctity and the trust in people in child care centers to not sentence Ms. Sutton I think to some type of confinement would definitely be to depreciate the seriousness of this offense. It would be sending a message that, well, things happen out there and if you don't mean to do it or it's the first time, it's okay, and this Court cannot allow that, although I don't think Ms. Sutton should be sent to the penitentiary for what she did, but I do think she needs to be incarcerated for a period of time to think about what she did and to think about her actions on that particular occasion and hopefully at some point in time she will admit to herself finally and quit denying this, admit to herself that she did act improperly, that she did act recklessly and irresponsibly and as a result of that she caused this broken jaw.

The trial court's findings in this matter are supported by the record. The defendant's pastor, John Randall Bell, testified that in conversations with the defendant, she "simply . . . had remorse that the child was hurt, but had no idea how the child got hurt." Throughout her testimony, the defendant denied that she had been angry or impatient, or that she had treated the child in a rough or violent manner. Both witnesses to the incident, however, described what can only be interpreted as violent treatment of a small child, with the defendant throwing the child "face first" to the floor in a "body slam," and then partially laying on top of the child to prevent her from rising. That the child did not require hospitalization for the resulting injury does not lessen the severity of the defendant's actions. We conclude that the trial court acted within its discretion in denying full probation to the defendant.

### B. Judicial Diversion

The defendant also argues that the trial court erred in not granting her judicial diversion. Whether the defendant should be granted judicial diversion is within the sound discretion of the trial

court.  <u>Bingham</u>, 910 S.W.2d at 456 (citing <u>State v. Bonestel</u>, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)).  We find no abuse of discretion by the trial court in its failure to grant the defendant judicial diversion.

### C.  Community Corrections

Lastly, the defendant argues that the trial court erred in denying her request for placement in the Hamilton County Community Corrections Program.  The defendant asserts that she meets the applicable statutory prerequisites for eligibility to the community corrections program, and that the trial court's denial of her request for placement in the program was arbitrary and capricious.  We disagree.

To be eligible for participation in a community corrections program, a defendant must meet the minimum eligibility requirements of Tennessee Code Annotated Section 40-36-106(a), which states:

> An offender who meets all of the following minimum criteria shall be considered eligible for punishment in the community under the provisions of this chapter:
>
> > (1) Persons who, without this option, would be incarcerated in a correctional institution;
> >
> > (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> >
> > (3) Persons who are convicted of nonviolent felony offenses;
> >
> > (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> >
> > (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
> >
> > (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a) (Supp. 1998). A defendant who meets the minimum eligibility requirements of this statute, however, is not automatically entitled to be sentenced under the Act. State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987)).

On June 23, 1999, a hearing was held on the defendant's motion for placement in the community corrections program. The trial court heard testimony from the program manager of the county community corrections program, and from the defendant. The Hamilton County Community Corrections Program manager testified that, after review, the program had determined that the defendant did not meet the minimum eligibility requirements for community corrections, based on the violent nature of her offense. The defendant testified that she was genuinely remorseful for her crime, and that she was willing to comply with the conditions of house arrest.

At the conclusion of the hearing, the trial court denied the defendant's request for placement in the county community corrections program, citing the violent nature of her offense, her lack of truthfulness regarding the incident, her failure to show true remorse, and her violation of a position of public trust in perpetrating the crime. The record supports the trial court's findings, and shows that its decision was neither arbitrary nor capricious. We find, therefore, that the trial court did not abuse its discretion in denying the defendant's request to be placed in the community corrections program.

## CONCLUSION

We conclude that the evidence supports the trial court's application of enhancement factors (4) and (10), and that the trial court did not abuse its discretion in denying the defendant's request for full probation or judicial diversion. We further conclude that the evidence supports the trial court's finding that the defendant was unsuitable for placement in the Hamilton County Community Corrections Program. Accordingly, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE